**MIL–KA–KO RESEARCH & DEVELOPMENT CORPORATION et al.,**
**Plaintiffs,**

v.

**OFFICE OF ECONOMIC OPPORTUNITY and United States of America,**
**Defendants.**

**Civ. A. No. 997–72.**

United States District Court,
District of Columbia.

Dec. 19, 1972.

Boasberg, Kass & Smith, Tersh Boasberg and Whitworth Stokes, Washington, D. C., for plaintiffs.

Harold H. Titus, U. S. Atty. for the District of Columbia and Robert M. Werdig, Jr., Asst. U. S. Atty., for defendants.

## OPINION AND ORDER

CORCORAN, District Judge.

This controversy is before the Court on cross motions for summary judgment of the defendant United States and the plaintiff, Mil-Ka-Ko Research and Development Corporation (hereinafter Mil-Ka-Ko).

### I

Under the authority of the Economic Opportunity Act of 1964 (EOA) 42 U.S. C. § 2701 et seq. the Office of Economic Opportunity (OEO) extended to Mil-Ka-Ko certain funds to develop anti-poverty projects for the benefit of poor residents of the Kona Coast, Island of Hawaii. Funding began with a grant action dated June 29, 1970 effective July 1, 1970 which was to expire by its own terms on

December 31, 1971.[1] The grant was subsequently extended until May 31, 1972. On May 12, 1972 the OEO informed the plaintiff that it would decline to refund the grant[2] beyond May 31, 1972.

Mil-Ka-Ko commenced this action May 17, 1972 asserting that the denial of refunding was agency action affecting certain fundamental rights of its members and that in light of recent decisions of the United States Supreme Court, Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) such action could not be taken without first affording the plaintiff the benefits of procedural due process guaranteed by the Fifth Amendment to the United States Constitution.

The defendant United States counters that a denial of refunding is not a termination or suspension of an ongoing program and that the plaintiff is entitled to only a "show cause" hearing as provided by statute before the exercise of agency discretion. The defendant further asserts that such a show-cause hearing was granted the plaintiffs on May 27, 28 and 29, 1972 in Hilo, Hawaii, that the responsible official—with the record of that hearing before him—remained unswayed as to the ability of Mil-Ka-Ko to perform as required and that the OEO accordingly declined to refund the program.

The plaintiff replies that the net effect of a decision not to refund is to be equated to a suspension or termination of a grant and therefore, that the provisions of the EOA (Sec. 2944(2)) providing only for a show cause hearing is constitutionally defective.

Thus at the outset the Court must determine

(1) whether the decision not to refund is really a "termination" or "suspension" in disguise, as the plaintiff suggests, and

(2) the ultimate question of whether the net effect of such a decision is such that it requires the defendant to afford parties in the position of the plaintiff an "opportunity for a full and fair hearing" with the safeguards such procedures entail.

## II

Obviously a deprivation of property may not be effected without due process. Goldberg v. Kelly, *supra*; Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S. Ct. 1743, 6 L.Ed.2d 1230 (1961). However, it remains to be seen whether the facts of this case reveal such a deprivation.

The applicable statutory provision to be considered is 42 U.S.C. Sec. 2944(2) which reads in pertinent part:

". . . an application for refunding . . . [shall not] be denied, unless the recipient agency has been given reasonable notice and opportunity to show cause why such action should not be taken . . . ."

Such statutory language is to be read in the light of the Fifth Amendment to the United States Constitution which provides that "No person shall be . . . deprived of . . . property, without due process of law."

There is no question that the "show cause" hearing granted the plaintiff by

1. The grant in controversy, Grant No. CG–9089, was originally entered on June 29, 1970, between the OEO and the Hawaii County Economic Opportunity Council for the establishment of the plaintiff agency. Earlier grants made pursuant to 42 U.S.C. § 2809(a)(5) amounted to $54,000. A subsequent grant, Grant No. CG–9161 was committed in the amount of $100,000 on June 23, 1971. In all, approximately $454,000 of Federal monies were committed by the OEO to support the plaintiff's programs.

2. Earlier difficulties had led the OEO to announce that they were suspending the plaintiffs' grant. The posture of suspension was abandoned on April 18, 1972, when the defendant first notified the plaintiff of its intention not to renew the grant on May 31st. This decision was confirmed by letter on May 12, 1972.

the defendant did not amount to procedural "due process." So the question becomes whether this situation is one in which plaintiff is entitled to due process; *i. e.* whether the plaintiff had a property interest.

Mil-Ka-Ko's position rests upon the fact that it still has large amounts of funds and equipment on hand and that these goods and monies will revert to the United States as a result of the defendant OEO's action. So the effect of the decision not to refund is something more than a decision not to divert further funds from the public treasury—it is a decision to recover unexpended funds and valuable equipment in which the plaintiffs now claim a property interest. It follows, the plaintiffs suggest, that such a deprivation must not be effected without due process of law.

It has been held that a welfare recipient, whose right to benefits is defined by statute has a property interest in receiving those payments and that they cannot be terminated without due process, Goldberg v. Kelly, *supra*. So, too, a tenured college professor has a property interest in his continued employment, Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); as do staff members dismissed during the term of their employment contracts, Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Even one employed with the implied expectation of retention has a protected "property interest," Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971).

■ After studying the record and the enabling legislation underpinning the OEO program, the Court concludes that Congress intended no such continuing interest to attach to grantees under EOA.

The nature of an OEO grant is such that it is limited in time as well as amount; i. e. funds and equipment are made available to the grantee for certain uses in a specifically indicated sphere of activity for a specific period of time. Just as the purpose for which monies can be spent are limited, so, too, is the period during which it can be spent.

■ There can be no Constitutional distinction between funds and equipment. While property interests may be acquired in each, mere possession does not vest the possessor with a constitutionally protected property right beyond the terms of the grant. Therefore, it is insupportable to suggest that the nonexpenditure of public funds, vests a constitutionally protected property interest in those funds in the persons with a limited authority to expend them after that authority has lapsed by its own terms. Equally insupportable is the suggestion that individuals in any agency whose authority had lapsed may refuse to return equipment or other property to the United States once the authority for its continued possession terminated.

Recently the Supreme Court provided a definition of the interest required to trigger Constitutional guarantees of procedural due process:

"Certain attributes of 'property' interests protected by procedural due process emerge from [past Supreme Court] . . . decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a *legitimate claim of entitlement to it* . . . .. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). (emphasis added)

In the context of the present discussion, the "legitimate claim of entitlement" to which the Supreme Court alludes is clearly limited by the terms of any grant made pursuant to the EOA. Once made, then the beneficiaries thereof must be afforded procedural due process before the grant can be curtailed

either in amount or duration. Statutory provisions have been made for such a situation in the OEO program.

"Financial assistance . . . shall not be terminated for failure to comply with applicable terms and conditions unless the recipient agency has been afforded reasonable notice and opportunity for a full and fair hearing." 42 U.S.C. Sec. 2944(3).

■ However, a "termination" refers to government action to truncate a "legitimate claim of entitlement." A denial of an application for refunding is hardly that. It is merely the disappointment of a "unilateral expectation" of a benefit and is unencumbered with the constitutionally required burden of procedural due process.

While the Court is aware of the possibility that an informal agreement between the parties might have acted to raise the "unilateral expectation" of refunding to the dignity of a "property interest," Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Court finds no evidence that such arrangement existed here. Nor is there any indication that the decision not to refund was taken to chill the plaintiffs' exercise of constitutionally protected freedoms.

For these reasons, the Court concludes that there are no constitutional defects in 42 U.S.C. Sec. 2944(2) because the refunding to which it applies does not embrace a property interest within the meaning of the Fifth Amendment.

### III

■ This brings the Court to the question of whether the defendant agency acted arbitrarily or capriciously in the exercise of its discretionary power not to refund the plaintiff. Under the mandate of Environmental Defense Fund v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584 (1971), the Court may review this sort of discretionary decision-making and require the administrative decision maker to articulate the factors relevant to the agency's decision. Despite this expanded concept of reviewability, the Court is still precluded from substituting its judgment for that of the administrative decision-maker. So long as the statement of reasons given by the agency provides an adequate explanation of the underlying rationale of its decision. "It is enough that the Administrator has acted within the statutory bounds of his authority, and that his choice among possible alternative(s) . . . is one which a rational person could have made." Federal Security Administrator v. Quaker Oats Co., 318 U. S. 218, 233, 63 S.Ct. 589, 598, 87 L.Ed. 724 (1943).

■ The record in this case reveals that the decision not to refund was made by an impartial official [3] who had before him the written recommendations of the official who conducted the show-cause hearing of May 27th through the 29th. He also had before him a record which revealed administrative chaos, lax accounting procedures and internal discontent. For example, a letter from a former staff director of Mil-Ka-Ko admits to "an almost complete absence of proper records." Def's exhibit 10. He had a record of the hearing just ended wherein the plaintiffs through counsel had had an opportunity to "show cause" why their agency should be refunded.[4]

---

3. Because of repeated allegations that the Regional Director, of OEO, Thomas Mercer, was biased and personally involved in the decision not to refund, authority to decide whether or not to refund the plaintiff organization was delegated to Mr. Eugene Gonzales. His decision of May 31, 1972 was not to refund the plaintiff.

The Court is not unmindful of the plaintiffs' allegations that Mercer engineered the decision not to refund out of personal pique with Mil-Ka-Ko personnel. The record reveals that Mercer, while allegedly conducting this vendetta, twice extended the plaintiffs' grant to give them an opportunity to bring Mil-Ka-Ko into compliance with OEO regulations.

4. The plaintiffs appear to labor under the misconception that the decision of Mr. Gonzales could be based only on evi-

It is not surprising that he remained unswayed by the protests of the plaintiffs.[5] While their disadvantage and hardship are real, even compelling, the conclusion that they were unable to manage federal funds is clearly supported by the evidence. The OEO exercised its discretion in weighing these factors one against another, and without commenting on the ultimate wisdom of the decision made the Court cannot say that it was arbitrary, capricious or without the support of substantial evidence.

■ For this reason, the Court declines to reverse the discretionary judgment of the responsible official.

### IV

The final argument put forth by the plaintiffs is that the defendant failed to follow its own regulations in deciding not to refund the Mil-Ka-Ko project.

It is asserted that no field "pre-review" was conducted; that the defendant didn't inform the plaintiff as soon as possible of its intention not to refund the project; and that the plaintiffs were not given enough time to frame an "adequate response" to the "charges" made by the defendant.

■ The record reveals otherwise. The defendant had informed the plaintiffs nearly six months before that continued failure to comply with regulations might result in suspension, termination or loss of authority. The response of the plaintiffs was dilatory and incomplete even in the face of repeated extensions and warnings. While it is not clear from the record that a field "pre-review" was conducted, the extended visit of Thomas Mercer to the project in January, 1972 certainly amounted to substantial compliance with this requirement. As for the alleged lack of time for the plaintiffs to frame a response to the "charges" of OEO officials, the Court finds that the plaintiffs had notice of the complaints of the OEO officials for several months and notice of the intention of the OEO officials responsible not to refund the project as much as six weeks prior to the "show-cause" hearing of May 27 through 29. It is clear that all parties understood from December, 1971 on that if Mil-Ka-Ko could not bring itself into compliance with agency regulations, it would not continue to receive Federal monies.

### V

■ The plaintiff has further moved for the Court to permit it to expend certain of the funds on hand for the fees of the attorneys representing it in this action. There are many occasions the expenditure of public funds for private assistance may be justified, especially when a meritorious cause is asserted or the rights of individuals are vindicated. The Court concludes that this action has not been characterized by either of these qualities and concludes that such an expenditure is not justified.

It is accordingly ordered this 19th day of December, 1972, that the motion of the plaintiffs for summary judgment

dence introduced at the show-cause hearing of May 27th through 29th. On the contrary, Gonzales was obligated to take into consideration all of the evidence available to him before exercising his discretion and was not limited to the record of the Hilo hearing.

5. The record of the show-cause hearing and the reports of Cassandra Flipper, the presiding officer, indicate that it was an emotionally charged marathon meeting wherein the plaintiffs themselves and through their attorney, Mr. Boasberg, made re-

peated representations of need and offered evidence of the good that the program was doing for the Kona coast residents. At one point, one of the children read a poetic protest. This interlude highlights the difficulty the parties have had in coming to grips with this problem. The defendants posed questions of accounting and management and the plaintiffs responded with assertions of need and deprivation. The reasons for the defendant's decision have been stated by Ms. Flipper and Mr. Mercer and are well documented by the record.

and attorneys fees is denied; and it is further

Ordered that the motion of the defendant for summary judgment be granted.