**CITY OF BEAVER FALLS, Plaintiff,**

v.

**ECONOMIC DEVELOPMENT ADMINIS-TRATION, U. S. Department of Commerce, Juanita M. Kreps, Secretary of Commerce, and Robert T. Hall, Assistant Secretary of Commerce for Economic Development, Defendants.**

**Civ. A. No. 77–1120.**

United States District Court,
W. D. Pennsylvania.

Nov. 14, 1977.

**852**

John J. Petrush, McClain, Petrush, Young & Miller, Beaver Falls, Pa., for plaintiff.

Martin D. Teckler, U. S. Dept. of Commerce, Washington D.C., Blair A. Griffith, U. S. Atty., Pittsburgh, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

This is a suit by the City of Beaver Falls, a municipal corporation in the State of Pennsylvania, against the Economic Development Administration of the United States Department of Commerce, and certain administrative officers of said Department, claiming that the defendants failed to administer properly the Public Works Employment Act of 1977 (42 U.S.C. § 6701 et seq. as amended).

The general scheme of the statute was to provide a scheme for funding by the federal government of local public works projects to be initiated by state, county, and local government units for the purpose of relieving the effects of unemployment in depressed areas. In 1976, Congress had passed a predecessor of this Act and appropriated two billion dollars to fund it. The projects submitted by various local government units for approval far exceeded the appropriation of 1976, and so the legislation was reenacted and amended in 1977 with some amendments and an appropriation of four billion dollars.

The City of Beaver Falls had submitted an application for such grants in 1976, but was disappointed in receiving no funding and submitted further applications in 1977 for projects which were approved. A "planning target" of $634,000 had been assigned to the City of Beaver Falls and Beaver Falls submitted projects which were expected to consume this sum of money. Later, the planning target for the City of Beaver Falls was adjusted to $484,000 and the City of Beaver Falls adjusted its priority of projects to account for the $484,000.

Subsequently, in about August 1977, the Big Beaver Falls Area School District for the first time submitted to the Economic Development Administration an application for a grant under the same program. Subsequent to this the Economic Development Administration notified the City of Beaver Falls that the two lower ranking applications on the plaintiff's revised priority list had been denied because of a lack of consent from the Big Beaver Falls Area School District to such application. The EDA then issued written notice to plaintiff that its highest ranking application for a project in the amount of $242,000 had been selected for funding. This was one-half of the planning target for the City of Beaver Falls. At about the same time the EDA also notified the Big Beaver Falls Area School District that its application had been selected for funding and tendered to said School District an offer in the amount of $242,000 for funding this project. The result of this application was to split in half the original planning target of the City of Beaver Falls, awarding one-half to the City of Beaver Falls, and one-half to the Big Beaver Falls Area School District.

It is not contested in this case that the Big Beaver Falls Area School District meets the requirement of the EDA for a local project within the City of Beaver Falls, because more than fifty percent of the students in the School District area come from the municipal area of the City of Beaver Falls.

The City of Beaver Falls here sues for injunctive relief to prevent the Economic

Development Administration from paying to the Big Beaver Falls Area School District the grant allocated to it on the grounds that the award of a grant to the Big Beaver Falls Area School District violated certain statutory conditions and was an abuse of administrative discretion subject to judicial review under the provisions of the Administrative Procedure Act, 5 U.S.C. § 706.

A motion for hearing on plaintiff's prayer for preliminary injunction was filed, a time was set for hearing and submission of briefs and a hearing was held on October 27, 1977. The parties submitted voluminous materials by way of briefs and the hearing proceeded on arguments of law on the assumption that there was no genuine issue as to any of the material facts. At the conclusion of the hearing on the motion for preliminary injunction it was stipulated that the record of said hearing should constitute the record of final hearing on the matter, there being no desire by the parties to present any further evidentiary materials.

There is no dispute between the parties that the court has jurisdiction over this matter by reason of a federal question involved. 28 U.S.C. § 1331.

We do not find the action subject to dismissal for failure to join the Big Beaver Falls Area School District because we do not find the presence of that party necessary on this record to determine the relief requested by the plaintiff.

Preliminary relief is an extraordinary remedy and the granting of a preliminary injunction is a matter of discretion in the trial court. It should only be granted when clearly justified by the circumstances of the case. Factors to be considered in the granting of a preliminary injunction are (1) the threat of irreparable harm to the plaintiff if the injunction is not granted; (2) the balance between the harm to the plaintiff by the denial of the injunction and the injury that would be imposed upon the defendant by granting the injunction; (3) the probability that the plaintiff will ultimately prevail on the merits of the case, and the balancing of the public interest involved.

A number of local government units have sought equitable relief against these same defendants in cases arising out of their administration of the predecessor act of 1976. While the ground of attack in each case has varied according to its own circumstance the same general principles apply to the resolution of the dispute. The courts considering these cases have uniformly denied the relief sought on the general basis of lack of a showing of irreparable injury. See *City of Grand Rapids v. Richardson*, 429 F.Supp. 1087 (W.D.Mich.1977); *City of Benton Harbor v. Richardson*, 429 F.Supp. 1096 (W.D.Mich.1977); *Lewis v. Richardson*, 428 F.Supp. 1164 (D.Mass.1977), and the following cases for which no reporter citations are presently available: *Valley Center School District v. United States*, No. 77–127T (Southern District of California, March 22, 1977); *City of Newburg v. Secretary of Commerce*, No. 77–127 (Southern District of New York, June 20, 1977); *Town of Narragansett v. Kreps*, No. 77–057 (District Rhode Island, February 4, 1977); *Joram v. Richardson*, No. 77–339 (S.D.N.Y.1977); *County of Calaveras v. United States*, No. 77–79 (E.D.Cal.1977).

All of the above cited cases arose under what is designated as Round I of the Local Public Works Program, the 1976 appropriation. In general they allege administrative failures to apply the statutory mandate correctly.

In *Metropolitan Dade County, Florida v. Kreps et al*, Civil Action No. 77–1300 (U.S. District Court, D.C.) a case arising under what is designated as "Round II" or the 1977 appropriation, the court remarked:

No one applicant, including Metropolitan Dade County, possesses a vested right to funds under the LPW Act as amended. *City of Benton Harbor v. Richardson*, 429 F.Supp. 1096 (W.D.Mich.1977); see *Mil-Ka' Ko Research and Development Corp. v. Office of Economic Opportunity*, 352 F.Supp. 169, 173 (D.D.C.1972), aff'd. [162 U.S.App.D.C. 97], 497 F.2d 684 (D.C.Cir. 1974). As was the case with the original LPW Act, the amended legislation has as its "overriding purpose" the reduction of

unemployment, rather than construction of specific public works projects in particular areas. *City of Benton Harbor v. Richardson*, supra, at 1101. Had it been the intent of Congress to create a vested right for the plaintiff and thousands of other applicants under the Round II program, it would have appropriated sufficient amounts to fund all eligible project applications. This was not done. It is, therefore, doubtful that plaintiff's inability to fulfill a unilateral expectation of augmented Round II funding rises to the level of irreparable harm. It should also be noted that the approximately $20 million in Round II funds designated by EDA for the Dade County-wide area will partially relieve the unemployment in Metropolitan Dade County, as well as within the municipal boundaries of other Dade County area grantees.

■ In this case the City of Beaver Falls complains that it will lose one-half of the $484,000 funding which it originally anticipated and to which it established entitlement under the provisions of the Act. As was stated in *The Town of Hope Mills v. Kreps*, C.A. 77–0040 Civ. 3 (E.D.N.C. August 16, 1977):

"However, plaintiffs are merely incidental beneficiaries of these funds; Congress' primary aim was to aid unemployed workers in areas of high unemployment. Such persons will not be harmed by denying the injunction for the same amount of funds will eventually be channeled into this general area (and earlier if the injunction does not issue); whether or not the motion is granted. Additionally, since capital improvements under the Act are to be made by private companies awarded contracts under a bidding procedure, 13 C.F.R. § 317.19, construction companies and workers residing in plaintiffs' town have the same opportunity to partake of the Congressional Largesse as do their counterparts residing in towns now scheduled to receive the funds."

One of the similar cases arising under Round I recites a similar concept:

In the Court's view the harm to itself, which plaintiff is claiming is only secondary in the circumstances of this case. The City has mainly argued that it will be deprived of the actual projects for which it sought federal funding. However, the overriding purpose of the legislation was to reduce unemployment, not to construct particular projects in particular areas. . . . In light of the unique statutory purposes, no one particular grant applicant has a vested interest or any sort of monopoly in being the agent whose public works projects are the vehicles for reducing unemployment. The legislation is not so concerned with *who* is employing presently unemployed persons, but that *someone* is. *City of Grand Rapids v. Richardson*, 429 F.Supp. 1087, 1093 (W.D.Mich.1977).

In addition to the failure of plaintiff to show irreparable harm to itself, the court must consider the other elements which justify the granting of a preliminary injunction. It appears to this court on examining the statutory scheme that Congress was intent on supplying these funds for the relief of unemployment in critical areas of high unemployment in the earliest possible time. There is a requirement that the funds be committed within ninety days of the acceptance of a grant so that construction can proceed. The approved projects were examined by the defendant on a basis of advancing the congressional aim. The delay in distribution of these funds due to litigation will work contrary to the congressional purpose of immediate aid. It is noted that one of the criteria for priority of projects is that of conservation of energy resources and we note that the Big Beaver Falls Area School District project involved the replacement of windows in its schools which we assume would be a heat conservation measure. The congressional purpose is also evidenced by the congressional requirement that funds which are not expended within the time provided by the statutory deadline shall revert back to the United States Treasury. There is considerable doubt in the minds of this court whether or not our interference with the payment of

the money to the school district pending this litigation would work such a reversion and thus deprive the ultimate beneficiaries of the benefits that Congress intended. We, therefore, find that the issuance of a mandatory injunction will not advance the public interest as expressed by Congress in adopting this legislation, that of speeding aid to areas of high unemployment as an emergency matter.

■ Plaintiff counters the government's argument of a lack of irreparable harm by the assertion that irreparable harm need not be shown when there is a clear violation of the statutory mandate. Plaintiff points to Section 107 of the Public Works Employment Act of 1977, which was the Round II appropriation of four billion dollars to fund the continuance of the 1976 Round I of the Act. This appropriation act contains certain amendments to the 1976 act, including Section 107(f) which reads:

> "Section 108 of such Act is amended by adding at the end thereof the following new subsections:
>
> (h)(1) Except as provided in paragraph (2) of this subsection the Secretary shall not consider or approve or make a grant for any project for which any application was not submitted for a grant under this Act on or before December 23, 1976."

Congress, pressured by the complaints of a large number of communities who were disappointed in the distribution of the Round I funds in 1976 attempted to secure that only these applicants should be considered for the Round II distribution. However, we find that the amendments to the Local Public Works Development and Investment Act of 1976, 42 U.S.C. § 6701 which were enacted on May 13, 1977, by the Act known as the Public Works Employment Act of 1977, add certain language with respect to projects of a school district that cast doubt on the absolute nature of the prohibition against approval of projects not submitted in 1976. Section 108 of the Act subsection (b) stated in 1976:

> "In making grants under this chapter, the Secretary shall give priority and preference to public works projects of local governments."

The 1977 Amendment added a series of subsections to (b) including (4) "a project requested by a school district shall be accorded the full priority and preference to public works projects of local governments provided in Section 108(b) of this Act." Other changes and conflicts between various provisions of the Act provide considerable support to the defendant for their administrative interpretation of the Act as set forth in their regulations and guidelines issued thereunder. Under these circumstances we find it extremely doubtful that the conditions set forth in the Administrative Procedure Act, 5 U.S.C. § 706 would apply to the situation at hand. That statute provides in part that:

> "The reviewing court shall . . .
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege or immunity;
>
> (C) in excess of statutory jurisdiction, authority or limitations, or short of statutory right . . . .".

We cannot find anything in the action of the defendants upon which to base a determination that the administrators of the Act performed their functions in an arbitrary or capricious manner. There appears to be a well-based argument for considering projects of a school district within a city having a target allocation under the 1977 appropriation to be allowed to share in the project target in accordance with an administratively determined priority of its application regardless of the fact that the School District had not submitted an independent application for a grant under the 1976 appropriation. There are provisions for a school district which is substantially co-terminus with a city which is allotted a project target under the act to submit projects along with the city under an agreement between those two governmental sub-divisions as to the priorities of their respective

projects. No such agreement as to priorities was every reached in this case and one of the reasons for the defendant administrative agency's disapproval of certain lower priority projects of the City of Beaver Falls was its failure to consider the relative priority of the School District's project.

Therefore, under the circumstances of this case we find no grounds for the granting of the injunctive relief prayed for. Because the parties have stipulated that the hearing on preliminary injunction shall constitute the full record in the case, the plaintiff's application for injunctive relief, either preliminary or permanent, is denied and the complaint will be dismissed.