COMMUNITY ACTION ORGANIZATION OF ERIE COUNTY, INCORPORATED, Plaintiff,

v.

ACTION, et al., Defendants.

No. CIV–82–290.

United States District Court, W. D. New York.

Sept. 7, 1982.

---

Henry E. Wyman, Buffalo, N. Y., for plaintiff.

Theodore Hirt, Washington, D. C., for defendants.

MEMORANDUM and ORDER

ELFVIN, District Judge.

On March 16, 1982 ACTION, the federal agency charged with administering the Domestic Volunteer Services Act of 1973, 42 U.S.C. § 5001 *et seq.* ("the Act"), rejected the 1982 grant application of plaintiff, the Community Action Organization of Erie County, Inc. ("the CAO") for continued funding as the sponsor of ACTION's Senior Companion Program ("SCP") within Erie County. On March 31, 1982, the scheduled expiration date of the 1981 grant, plaintiff filed its Complaint in this action claiming that the manner in which the nonrenewal decision had been reached had deprived the CAO of its procedural rights under the Act and accompanying regulations.

I denied plaintiff's request for a temporary restraining order staying the expira-

tion of the grant and the functions and funding of the SCP in Erie County were transferred to a new sponsor April 1, 1981. Now before me are plaintiff's motion for a preliminary injunction and defendants' motion for summary judgment.

The gravamen of plaintiff's case is that it was denied a meaningful opportunity to know and rebut the bases upon which AC-TION determined to not renew its grant. It does not seek review of the merits of the defendants' decision.

The Act provides that an application for refunding shall not be denied "unless the recipient has been given reasonable notice and opportunity to show cause why such action should not be taken." *See,* 42 U.S.C. § 5052. The implementing regulations detail the steps to be taken prior to nonrenewal. *See,* 45 C.F.R. § 1206.2–1 *et seq.* They require that

"[w]herever possible ACTION shall make a tentative decision at the time of its field preview as to the level of refunding which it intends to furnish a recipient for the recipient's next program year. An ACTION official shall notify the recipient of his tentative decision normally in the letter of understanding and as soon as possible following the field preview.

\*    \*    \*    \*    \*    \*

"Before rejecting an application of a recipient for refunding \* \* \* ACTION shall notify the recipient of its intention and shall offer the recipient an opportunity to submit written material and to meet informally with an ACTION official to show cause why its application for refunding should not be rejected or reduced. Written notification of AC-TION's decision shall be sent to the recipient as far in advance of the end of the recipient's current program year as possible \* \* \*. The notice shall also state the reasons for the tentative decision to which the applicant shall address himself if he wishes to make a presentation.

\*    \*    \*    \*    \*    \*

"The official who shall conduct the meeting shall be an ACTION official who is authorized to make the grant of assistance in question, or his designee.

\*    \*    \*    \*    \*    \*

"An ACTION official who participated in the tentative decision to reject or reduce the application for new assistance shall wherever possible attend the meeting."

■ The obvious intent of section 5052 of the Act and these regulations is to reserve to ACTION officials broad discretion in determining whether to renew grants. The recipient is accorded only the minimal courtesy, prior to nonrenewal, of knowing the reasons for denial or reduction and having the opportunity to persuade the decisionmaker that the planned action is incorrect.

■■ The breadth of the discretion vested in ACTION severely restricts the scope of judicial review on the merits. However, the agency's discretion does not include the right to dispense with the minimal procedural rights accorded an applicant and an applicant may obtain judicial intervention to insure that the regulations are complied with by the agency.

In the instant case, plaintiff contends that defendants have abridged its procedural rights by failing to provide it with adequate prior notice of the bases for its tentative decision, thereby prejudicing the CAO's ability to present effectively its case for renewal, by failing to clarify and document its "charges" at the show cause meeting, by failing to make a record of the meeting, by failing to provide plaintiff with the names of its "accusers" and thereby to allow the CAO to confront and cross-examine them at the meeting and by depriving the CAO of an impartial decision maker.

■ While plaintiff purports to rely on the statute and regulations previously cited, the rights allegedly abridged are by and large those associated with an adjudicative hearing where the full panoply of due process rights is applicable. The show cause meeting is not an adjudicative hearing. The decision to not renew an annual grant does not trigger Constitutional protections. *Mil-ka-ko Research and Develop. Corp. v.*

*Office of Econ. Op.,* 352 F.Supp. 169 (D.D.C. 1972). Simply put, a recipient can have no property interest in continued funding upon the expiration of a grant.

> "A denial of an application for refunding * * * is merely the disappointment of a 'unilateral expectation' of a benefit and is unencumbered with the constitutionally required burden of procedural due process." *Id.,* at 173.

Plaintiff's claims must therefore be tested solely by reference to the Act and regulations.[1]

Turning first to the claim of inadequate prior notice, it is readily apparent from the record provided by the parties that ACTION officials had indicated their dissatisfaction with the CAO's administration of the grant long before the March 16, 1982 decision. The affidavits submitted by defendants describe problems relative to prior untimely applications and internal CAO communication failures. The current grant application was repeatedly deemed unacceptable by ACTION. The validity of the shortcomings identified by Carolyn Whitlock, the State Program Director for ACTION, does not concern me. What is relevant is that she identified numerous aspects of the current application as unsatisfactory.

Whitlock notified the CAO in late December of 1981 that a three-month extension of the 1981 grant would be allowed, but that, if the CAO did not provide "concrete assurances" of improved management capacity, another sponsor would be sought.

Correspondence during the extension period clearly indicates that from ACTION's viewpoint CAO was not able to provide such assurances. Further problems with the current application were identified by Whitlock and the CAO lost the support of its advisory committee which informed Whitlock in January 1982 that in its opinion a new sponsor should be sought. Whitlock responded by asking the CAO if it intended to relinquish sponsorship voluntarily. The CAO declined to do so, but promised that its Board of Directors would meet in February to discuss management shortfalls, if any.

On February 25th ACTION issued its tentative decision not to renew the grant. It identified the following reasons for its decision:

> A. Ineffective management of the Grant as evidenced by:
>
> 1) Numerous errors in the continuation application submissions for grant years 3, 4, 5 and 6. The budget justifications,

---

1. The CAO argues in the alternative that, by virtue of the statutory preference for community action agency sponsorship (*See,* 42 U.S.C. § 5012 and 45 C.F.R. § 1207.2–3), ACTION must make a substantial showing justifying removal of the SCP program from the CAO's control. *See, Economic Op. Com'n of Nassau Cty., Inc. v. Weinberger,* 524 F.2d 393, 402 (2d Cir. 1975).

It is true that the Act and regulations governing the selection of grantees state a preference for sponsorship by a community action agency such as the CAO. *Ibid.* Nevertheless, no such preferred status is accorded by the renewal provisions. All grantees, most of whom will be community action agencies, are governed by the same procedures and are entitled to no more than a show cause meeting in which to state their case for renewal.

It is also true that the court in *Weinberger* declared that the federal agency, HEW in that case, must make a substantial showing justifying removal of a local program from community action agency control. However, the renewal regulations were not applicable in *Weinberger* because the reduction in funds was minimal. The court derived its holding from the general statutory preference for local control by a community action agency.

Even if *Weinberger's* holding was applicable to the grant renewal process, a close reading of the case reveals that the showing deemed satisfactory by the court places no greater burden on the federal agency than the prior notice requirement of the renewal regulations. The court found that HEW had not abused its discretion in channeling some of the community action agency's funding to another agency. It based its finding on the fact that HEW had forewarned the plaintiff agency some four months earlier that such action would be taken. Thus, even though the "substantial showing" language is on its face difficult to reconcile with the "show cause" language of the regulations, in practice the requirement is the same under either standard. The federal agency must give prior notice of its intended action and allow the local agency time in which to correct its practices. Any broader reading of *Weinberger,* such as that advanced by plaintiff, cannot be justified in light of the clear and unequivocal language of the Act and regulations regarding renewal of funding.

station grid information and budget commitments in MUs [Memoranda of Understanding] from stations all computed differently. Frequently MUs are not approvable or are inadequately completed.

2) Lack of adequate internal communication system. Information necessary for effective management of the grant is not shared between [sic] Executive Director, project staff and the fiscal department thus making it impossible for coordination between fiscal and programmatic aspects of the project.

3) Current year financial status reports show underexpenditure of the non-federal commitment per the Notice of Grant award.

B. Negative impact on Senior Companion activity as evidenced by:

1) The inability of Senior Companions to perform volunteer assignments due to unavailability of van transportation. Unpaid vendor bills resulted in no gas for the van.

2) Delays of up to two to three months in reimbursing travel expenses for Senior Companions.

3) The great difficulty the Advisory Council has in getting necessary information from CAO in order to make informed recommendations on project activity. Monthly and/or quarterly financial status reports have not been made available to the Advisory Council or Senior Companion Program Staff.

4) Numerous errors in Senior Companions' accrued leave records.

5) The threat of termination of Senior Companions if they did not attend CAO meetings which are not related to volunteer assignments and if they did not bring ten registered voters each to these block grant lobbying meetings.

Despite the CAO's claim to the contrary, the reasons provided by ACTION are quite specific and identify each of the areas to be addressed by the CAO at a show cause meeting. Indeed, their specificity and clarity is evidenced by the fact that the CAO responded in detail to each of the claims in a lengthy submission prepared prior to its meeting with ACTION officials.

In doing so it conceded that applications had been delayed in the past, that the Advisory Committee believed that there was inadequate communication between itself and the CAO staff, that for a short period of time unpaid vendor bills prevented transportation of program volunteers to work sites and that "personality problems" had caused internal problems among the CAO staff. While it disagreed with most of the other objections, it certainly understood them well enough to prepare its rebuttal.

■ The record before me simply fails to support the contention that the CAO was not adequately apprised in advance of the reasons for ACTION's determination so as to allow it to prepare for the show cause meeting.

■ With respect to the conduct of the meeting itself, the CAO complains that it could not confront and cross-examine its accusers. No such right is accorded by the applicable regulations. Plaintiff again misapprehends the nature of the review which they contemplate. The show cause proceeding is an informal meeting, not a trial. The agency is not required to convince the CAO of the merits of nonrenewal. The obligation is solely on the CAO to persuade ACTION officials that they are entitled to renewal. CAO also asserts that defendant Stupp, who presided at the meeting, was not impartial. Again, the regulations do not call for an impartial officer. To the contrary the meeting is to be conducted by an ACTION official who is authorized to award the grant in question. The regulations thus contemplate that the presiding officer will not be the neutral arbiter associated with an adjudicative hearing but, in fact, an agency official with prior knowledge and opinions as to the matter before him. This is entirely consistent with the fact that the proceeding is an informal meeting of those involved in the grant application process. Plaintiff complains further that Whitlock was not present. Again the regulation states only that officials who

participated in the tentative decision "shall wherever possible attend the meeting." It does not make them indispensible parties.

Lastly, plaintiff complains that the defendants failed to make a formal record of the hearing. Nowhere in the regulations applicable to nonrenewal is a record required. Moreover, the documentary record compiled by the parties quite adequately describes the course of events which prompted the decision to obtain a new sponsor. That record simply offers no support for plaintiff's claim that the Act and regulations were not followed.[2]

Plaintiff has not only failed to sustain its burden for purposes of obtaining preliminary relief,[3] but I can discern no material issue of fact precluding summary judgment in defendants' favor. Accordingly, it is hereby ORDERED that plaintiff's motion for a preliminary injunction is denied and defendants' motion for summary judgment dismissing this action is granted.

**2.** Even if such a claim was tenable, the agency is not held to strict compliance with the regulations. So long as it has substantially complied with the intent and spirit of the rules, its actions will not be faulted for merely technical omissions absent a showing of prejudice. *See, Economic Op. Com'n of Nassau Cty., Inc. v. Weinberger, supra* at 399.

**3.** I need not reach the issue of irreparable harm. However, to remove any doubt on this ground, let me note that plaintiff has not been able to confirm the most concrete injury alleged, namely—the loss of matching state funds. The most that is alleged is that the nature of the CAO's functions under the state grant will have to be "substantially restructured." *See,* April 22, 1982 affidavit of Charles Perkins, Acting CAO Director, ¶ 10.