## NATIONAL CONSUMER INFORMATION CENTER

v.

Bert A. GALLEGOS, Director of Community Services Administration.

## NATIONAL CONSUMER INFORMATION CENTER

v.

Bert A. GALLEGOS, Director of Community Services Administration, Appellant.

## NATIONAL CONSUMER INFORMATION CENTER, Appellant,

v.

Bert A. GALLEGOS, Director of Community Services Administration.

Nos. 75–1983, 75–1984 and 75–2161.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 20, 1976.

Decided Jan. 18, 1977.

David M. Cohen, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and William Kanter, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., were on the brief for appellant in Nos. 75–1893, 75–1894 and appellee in No. 75–2161. Ann S. DuRoss, Asst. U. S. Atty. and Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., also entered appearances for appellant in Nos. 75–1983 and 75–1984.

Clifton E. Curtis, Washington, D. C., for appellant in No. 75–2161 and appellee in Nos. 75–1983 and 75–1984.

Before BAZELON, Chief Judge, MacKINNON, Circuit Judge and MERHIGE,* United States District Judge for the Eastern District of Virginia.

MERHIGE, District Judge:

The defendant-appellant Bert A. Gallegos, Director of the Community Services Administration (hereinafter "CSA") seeks review of the District Court's amended order of summary judgment for the National Consumer Information Center (hereinafter "NCIC"), ordering CSA to refund and to continue payments to NCIC at the level of $36,000 per month until: (1) CSA has published standards for the evaluation of NCIC's effectiveness; and (2) CSA has evaluated NCIC pursuant to those standards and has established that the NCIC program is not one of "demonstrated effectiveness." NCIC cross-appeals on the District Court's refusal to hold that NCIC is also entitled to continued funding until, pursuant to 42 U.S.C. § 2944(2), it is given written notice that its funding will be terminated, and given an opportunity to show cause why it should be refunded. We reverse in part and affirm in part.

NCIC is a non-profit consumer action corporation organized under the laws of the

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

District of Columbia and funded through Howard University and the Economic Opportunity Act of 1964, *as amended,* 42 U.S.C. § 2701 *et seq.* On January 4, 1975, the Headstart, Economic Opportunity, and Community Partnership Act of 1974 (hereinafter "Community Services Act") Pub.L. 93–644, 88 Stat. 2310, was signed into law transferring the funding procedures and rights relevant to the instant case to the Community Services Administration, an agency created within the Executive Branch. Since 1970, NCIC has annually applied for and received funding from the Economic Opportunity Act to operate, first, a neighborhood and then a national consumer action resource center to serve the needs of low-income consumers and assist local community action agencies and programs. For the fiscal year ending June 30, 1974, plaintiff received a grant totalling $400,000, or approximately $36,000 per month.

On March 21, 1974, NCIC applied for a $2,147,038 grant for the fiscal year beginning July 1, 1974 in order to continue and expand its program. On June 28, 1974, meetings were held between representatives of NCIC and the Office of Economic Opportunity (hereinafter "OEO"), the predecessor of CSA. At the conclusion of the meetings, NCIC was offered a grant of $25,000 for one month, with a possible continuation of another month, in order to permit the continuance of the program's activities pending an OEO evaluation pursuant to Section 228(c) of the 1964 Act. 42 U.S.C. § 2815(c). NCIC rejected the offer and filed suit in the District Court the following day, June 29, 1974. Effective June 30, 1974, defendant was appropriated fiscal year 1975 funds in "[s]uch amounts as may be necessary for continuing projects or activities . . . which were conducted in the fiscal year 1974." Pub.L. 93–324, 88 Stat. 282, at § 101(b) (1974).

On September 30, 1974, the District Court granted plaintiff's motion for a preliminary injunction, finding that the plaintiff had made a strong showing that it had been funded in the past under either Section 221 or Section 232 of the 1964 Act, and that the

Director of OEO was acting in violation of NCIC's statutory rights under those sections. The Court ordered the OEO to grant NCIC $36,000 for allowable costs incurred during the period of July 1, 1974 through September 30, 1974, and to continue NCIC's program at the level of $26,733 per month pending a final determination of the case. The District Court concluded its proceedings on the matter on November 14, 1975, partially granting, by amended order, the plaintiff's motion for summary judgment and denying that of the defendant. Pertinent parts of the District Court's Memorandum and Order are as follows:

> Pleadings and submission subsequent to that date [June 30, 1975] have shown that although appellee's application under 42 U.S.C. § 2825 was funded under 48 U.S.C. § 2808 [sic], it is now apparent that appellee's claim may be considered only under 42 U.S.C. § 2825. The Court's Order of June 30, 1975 is accordingly amended to read as follows: . . . ORDERED, ADJUDGED AND DECREED that defendant Director of the Community Services Administration, his agents, employees, successors in office and persons acting in concert or participation with them are hereby permanently enjoined from refusing to: 1. refund and continue plaintiff's consumer action program, at a level consonant with plaintiff's funding for Fiscal Year 1974, i. e., at $400,000 per year minus amounts heretofore disbursed since June 30, 1974, by the defendant to the plaintiff, until, pursuant to § 228(c) of the Economic Opportunity Act of 1964, as amended, 42 U.S.C. § 2815(c) (Supp.III, 1973), an evaluation establishes plaintiff's program is not one of "demonstrated effectiveness;" and 2. refund and continue plaintiff's consumer action program, at a level consonant with plaintiff's funding for Fiscal Year 1974, i. e., at $400,000 per year minus amounts heretofore disbursed since June 30, 1974, by the defendant to the plaintiff, until the defendant (a) has developed and published general standards for evaluation of plaintiff's effectiveness as a consumer action program

pursuant to Section 901(b) of the Economic Opportunity Act of 1964, *as amended,* 42 U.S.C. § 2995(b), and (b) has considered those standards in deciding whether to renew or supplement financial assistance to plaintiff pursuant to Section 901(b) of the Economic Opportunity Act of 1964, *as amended,* 42 U.S.C. § 2995(b).

CSA contends that the District Court erred in requiring the CSA to continue the funding of the NCIC program until its evaluation establishes that the NCIC program is not one of demonstrated effectiveness. The parties are in accord that the NCIC program, since its inception, has been classified as a "pilot or demonstration" project under Section 232 of the 1964 Act. 42 U.S.C. § 2825. The funding rights of Section 232 programs, until recently, have been controlled by Section 228(c) of the 1964 Act, 42 U.S.C. § 2815(c) (Supp.III, 1970):

> The Director shall make whatever arrangements are necessary to continue pilot or demonstration projects of demonstrated effectiveness or which have not yet been evaluated until such time as an evaluation is conducted and the effectiveness determined and to carry out evaluations of such projects *of the type described in this section* [consumer action and cooperative programs] *receiving assistance under Section 2825* [section 232] *of this title during the fiscal year ending June 30, 1971 or June 30, 1972.* (Emphasis added).

With the enactment, however, of the Community Services Act of 1974, Section 228(c) was "amended by striking out 'shall make whatever arrangements are necessary' and inserting in lieu thereof 'is authorized to make whatever arrangements are necessary.'" 88 Stat. 2295. The legislative history of the amendment indicates that Congress recognized, prior to the Community Services Act, Section 2815(c) *required* the Director to fund consumer action programs pending an evaluation, and that Congress deliberately chose to change the provision to make continued funding a discretionary matter.

> The Senate amendment [identical in its relevant respects to Section 2815(c)] *required* the Director to continue funding Consumer Action and Cooperative Programs funded under Section 232 of the Economic Opportunity Act during fiscal years 1971 and 1972. There was no comparable House provision.
>
> The conference agreement provides that the Director *is authorized* to carry out consumer action and cooperation programs authorized under Sec. 232 during fiscal years ending June 30, 1971 or June 30, 1972. (Emphasis added).

H.Rep. No. 93–1639, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News, pp. 8101, 8104. The issue before the Court then is whether the enactment of the Community Services Act, amending the language of Section 228(c), abates or otherwise alters NCIC's statutory rights under the section as it existed prior to the amendment.[1]

▮ The effect of a change in the law while a case is pending a final judgment is controlled by language in the case of *Bradley v. Richmond School Board of the City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1973): "[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *See also Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). NCIC argues that Section 601(d)(3) of the Community Services Act, Pub.L. 93–644, 88 Stat. 2311, preserves its cause of action under the prior wording of Section 228(c). Section 601(d)(3) provides that:

> No suit, action or other proceeding, and no cause of action by or against the Office of Economic Opportunity, or any action by any officer thereof acting in his

---

1. Neither side contest that if should the Court hold that an evaluation pursuant to old Section 228(c) is necessary, the evaluation must be conducted pursuant to the procedures required by Section 901(b) of the Economic Opportunity Act of 1964, *as amended,* 42 U.S.C. § 2995(b).

official capacity shall abate by reason of the enactment of the Headstart, Economic Opportunity, and Community Partnership Act of 1974.

NCIC's complaint was filed over four months before the effective date of the Community Services Act, and was. based, in part, on rights allegedly secured by the language of the now amended Section 228(c). Section 601(d)(3) is susceptible of at least two interpretations: First, it may stand for the proposition that no substantive or procedural rights existing under the Economic Opportunity Act *and* claimed in a suit, action or other proceeding initiated before January 4, 1975 will be lost by reason of the new Act. Second, it may stand for the much more limited proposition that no suit, action or other proceeding will be defeated merely because the OEO as an entity was abolished and the CSA created in the OEO's stead; the section acts only to substitute CSA for OEO in any pending proceedings. There is little or no legislative history to guide the Court on ascertaining Congress's intended version. However, the section's position in the Act indicates, by its context, that the latter version is the correct one. Section 601 appears in the portion of the Act that abolishes the OEO and establishes the CSA, Pub.L. 93–644, § 601, 88 Stat. 2310, not in the portion of the Act that deals with the funding of the various consumer action programs.

Such an interpretation also has practical appeal. It seems arbitrary to distinguish NCIC from other similar Section 232 programs on the application of the Community Services Act solely on the fact that NCIC filed suit before January 4, 1975. If NCIC's interpretation of Section 601(d)(3) is adopted, it will, by virtue of its suit, have the right to mandatory funding from the Director, after January 4, 1975, and those agencies that have not filed suit or instigated other adjudicative proceedings will be subject to discretionary funding from the Director after that date. Furthermore, no readily ascertainable standards would exist for *terminating* NCIC's right to mandatory funding if Section 601(d)(3) is said to com-

pletely preserve NCIC's substantive rights under the old Act; it is at least potentially indefinite. Finally, the interpretation would have encouraged programs to file suit under the Economic Opportunity Act so as to preserve their statutory position if the changes eminent in the proposed Community Services Act would appear to function to their detriment. It is an anomaly indeed to suggest that Congress intended to encourage, via the filing of a lawsuit or some other similar procedure, programs to circumvent the procedures it had so carefully amended in passing the Community Services Act.

■ Accordingly, Section 601(d)(3) cannot be said to provide the "statutory directive" that would be an exception to the principle of the *Bradley* case. However, the *Bradley* court noted that another exception "to the general rule that a court is to apply a law in effect at the time it renders its decision 'had been made to prevent manifest injustice' . . ." 416 U.S. at 716, 94 S.Ct. at 2019, *quoting Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). As an example of 'manifest injustice' the Court stated that it "has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional." 416 U.S. at 720, 94 S.Ct. at 2020, *citing Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964). An application of this exception to *Bradley* is appropriate in the instant controversy. Until January 4, 1975, NCIC was operating under and in reliance on Section 228(c) of the 1964 Act which provided that it would be funded until either an evaluation of its program had been completed or until its program, once evaluated, had been adjudged to not be one of "demonstrated effectiveness." This right to be funded attached to the NCIC program from the inception of its subsidization by the OEO, and was lost on January 4, 1975 when Congress changed the funding framework. Accordingly, it is our view that to prevent "mani-

fest injustice", NCIC was entitled to be funded pursuant to old Section 228(c) until January 4, 1975, whereupon its funding became discretionary with the CSA Director.[2] That portion of the District Court's order to the contra is reversed.

■ Also at issue is the level of funding required by the 1964 Act, to which the NCIC program was entitled until January 4, 1975. As heretofore stated, during the fiscal year 1974 NCIC's consumer action program received $400,000 from OEO. On the last weekday of fiscal year 1974, OEO, through authorized representatives, offered NCIC $25,000 a month on a temporary basis to enable it to continue its program activities.[3] The District Court found, and we concur, that the offer was inadequate to sustain NCIC's current operating program activities, and directed that NCIC be funded at $36,000 per month (fiscal year 1974 funding levels) pending an evaluation. The mandatory funding requirement of old section 228(c) clearly envisioned that funding should be continued at meaningful levels, and the District Court appropriately exercised its discretion in assaying the facts of the case to determine an appropriate funding level. Its judgment is not disturbed, and we hold that NCIC was entitled to $36,000 per month until January 4, 1975.

NCIC also argues that it—in addition to being funded as a Section 232 program— has been funded under and operated consistently with Section 221 of the 1964 Act. 42 U.S.C. § 2808. As a Section 221 program NCIC's application for refunding may not be denied unless OEO or its successor CSA has given NCIC reasonable notice of the

denial and an opportunity to contest it. 42 U.S.C. § 2944(2). Section 221 and Section 210 allow for the funding by the Director of (a) "community action agencies", 42 U.S.C. §§ 2808(a), 2790(a), and (b) public or private nonprofit agencies if (i) the Director determines that a program is needed in an area without a community action agency, 42 U.S.C. §§ 2808(b), 2790(d), (ii) a local community action agency gives its approval for such a program to be conducted in its jurisdiction, 42 U.S.C. § 2808(b), or (iii) the Director determines that a local community action agency has failed to operate in a satisfactory manner. 42 U.S.C. § 2790(d). In each case, however, the Director must make a formal designation e. g., 42 U.S.C. § 2944(1), or other specific finding, e. g., 42 U.S.C. § 2808(b) precedent to funding.

■ While there is no formal designation or finding by the Director in evidence on the nature of the NCIC program,[4] the parties agree that some money that was earmarked for Section 221 programs was channeled into the NCIC program. NCIC contends that the grant of Section 221 funds should be considered a constructive designation. The facts of the case do not, however, support that contention. All the grant forms issued to NCIC by the OEO over the five years of funding, Forms 14 and 314, utilize the Program Account No. 84, and bear the title "Demonstration." The regulations concerning accounting codes, as published in the Program Account Codes Manual and amendments thereto, indicate that this number and title are used exclusively for demonstration or pilot programs authorized by Section 232. The fact that NCIC

---

2. Although programs are typically funded for the federal year, the provisions of old Section 228(c) contemplate mandatory temporary funding for less than fiscal year periods, and accordingly, the Court holds that the director's discretion as to continued funding under the amended section becomes effective immediately upon the effective date of the Community Services Act, albeit its incidence in mid-fiscal year.

3. There is some dispute over whether the offer for the second month was conditioned on appropriate funds being available and a determi-

nation of need but, in light of the Court's analysis, it is not material to the outcome of this litigation.

4. There has been introduced into evidence somewhat contradictory statements made by offices of OEO and CSA in retrospective analysis of NCIC's classification. These statements are only an indirect indication of the director's designations precedent to funding, however, and even if the Court were to adopt the appellee's interpretation, evidence as a whole in this cause is adequate to sustain the district court's overall finding on this issue.

received Section 221 money is explained by Congress's failure to specifically appropriate enough Section 232 funds in some fiscal years; during the lean years the Director, pursuant to the authority granted him under Section 616, 42 U.S.C. § 2966, to transfer funds appropriated from one program to another, transferred Section 221 money to NCIC, a Section 232 program.[5] That portion of the District's Court's order denying NCIC the right to the procedures of Section 604, 42 U.S.C. § 2944(2), is affirmed.

Finally, NCIC argues that the Fifth Amendment to the United States Constitution provides it with the right to a notice of denial of refunding and an opportunity to show cause why the funding should be continued. It argues that four years of funding have created a mutual understanding which rises to the status of a constitutionally protected right.[6] *See Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct.

2694, 33 L.Ed.2d 570 (1972). NCIC has always received its grants on a year-to-year basis, and grants made on this basis, even over a period of years, cannot create more than a "unilateral expectation," *see Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), of continued funding which is not entitled to constitutional protection.[7] *Mil-Ka-Ko Research and Development Corp. v. OEO,* 352 F.Supp. 169 (D.D.C.1972), aff'd, 162 U.S.App.D.C. 97, 497 F.2d 684 (1974). *See also Sims v. Fox,* 505 F.2d 857 (5th Cir. 1974) (en banc).

*Reversed in part; affirmed in part.*

5. Congressman Powell, the House Manager of the Conference Report on the Bill when it was initially submitted, expressed the purpose of Section 616:

> The practical wisdom of the administrative flexibility that this [Section] allows should be clear on its face. If some community action programs falter, then more neighborhood youth corps workers could be provided, or vice versa.

111 Cong.Rec. 23932.

6. NCIC argues that it received an informal and somewhat ambiguous representation by OEO's Director of Operations that NCIC would receive "continued funding", a fact which CSA disputes by specific affidavit from the party that allegedly made the representation. Such a

representation, if made, cannot be said to elevate NCIC's funding rights to a constitutional status that requires procedures in addition to those that are statutorily mandated. In any event, one possible interpretation of the alleged representation was that continued funding pending an evaluation was statutorily mandated, and an offer of temporary funding was in fact formally made.

7. NCIC also argues that it has a valid property interest in maintaining its reputation, good name and integrity. There is no evidence, however, that any of this was impaired; it was not a termination attempted for cause. *Cf. Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).