**Abraham SHAMIE, Plaintiff-Appellee Cross-Appellant,**

**v.**

**CITY OF PONTIAC, Defendant-Appellant Cross-Appellee.**

**Nos. 78–1301, 78–1302.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 19, 1979.

Decided April 21, 1980.

Peter A. Letzmann, Deputy City Atty., Pontiac, Mich., for defendant-appellant cross-appellee.

Lawrence S. Katkowsky, Keller & Katkowsky, Southfield, Mich., for plaintiff-appellee cross-appellant.

Before LIVELY, KEITH and BOYCE F. MARTIN, Jr., Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This case is a product of plaintiff-appellee Abraham Shamie's nine-year effort to obtain a liquor license from the City of Pontiac, Michigan. Between 1970 and 1975, Shamie made repeated unsuccessful applications to the local licensing authorities. Finally, in December, 1975, he filed suit in federal district court against the City and various City officials. His complaint, based on 42 U.S.C. § 1983 and 28 U.S.C. § 1331, alleged violation of his due process and equal protection rights. At a preliminary hearing, counsel for defendant-appellant Pontiac assured the court that city authorities would process Shamie's then-pending license application in accordance with routing procedures prescribed by a new city ordinance. In response to a suggestion by the district judge, Pontiac's attorney also agreed that the licensing commission would, in the event of a negative decision, furnish Shamie with reasons supporting denial of his application. Shamie accepted the City's proposals and on December 16, 1975, the court issued an order embodying the parties' agreement.

In May, 1976, the commission disapproved Shamie's application. In lieu of intelligible "reasons" for its action, it offered only the pronouncement that the plan was "not consistent with the priorities established."

Shamie amended his proposal, presumably to conform to the "priorities," and resubmitted it. City authorities again rejected the plan on June 8, 1976, this time without written comment.

Shamie pursued his case in district court, which issued an opinion on December 28, 1977. *Shamie v. City of Pontiac*, 443 F.Supp. 679 (E.D.Mich.1977). The court found that the City had failed to accord Shamie due process and assessed "exemplary damages" of $25.00 per day, to accrue from June 8, 1976, (the date the commission first failed to comply with the agreement between Shamie and the City's attorney), until the city authorities rectified their omission. The commission finally issued reasons for another rejection of Shamie's plan on July 12, 1979. The complaint against individual city officials was dismissed.

In this appeal, the City of Pontiac seeks reversal of the damage judgment against it.

Shamie cross-appeals, alleging that he is entitled to damages from the period between 1970 and December 16, 1975. He insists that he was denied due process, equal protection, and the right to petition the government even before he entered into the agreement with Pontiac's attorney.

Before reaching the merits, we must determine whether *Monell v. New York Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), decided while this appeal was pending, affects our jurisdiction to hear this case. According to *Monell*, local governments continue to enjoy immunity from suit under 42 U.S.C. § 1983, unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or *decision officially adopted and promulgated by that body's officers.*" *Id.* at 690, 98 S.Ct. at 2036. (Emphasis added).

■ The Supreme Court specifically declined to delineate the precise scope of the *Monell* rule. *Id.* at 701, 98 S.Ct. at 2041; *see also* 26 Cr.L. 2091. In this instance, however, the Pontiac licensing authority's persistent refusal to give Shamie reasons for

denying his application appears to fall within the language quoted above. In effect, Shamie has raised constitutional objections to a decision binding on an organ of city government. What triggers the *Monell* exception is that such a deprivation has been claimed from a decision issuing from a policy or "custom" of the local government. We therefore find that the jurisdictional limitations imposed by *Monell* do not encompass the present case. The same reasoning applies to jurisdiction under 28 U.S.C. § 1331, since we have held that the *Monell* principle extends to that statute as well. *Jones v. City of Memphis, Tennessee,* 586 F.2d 622 (6th Cir. 1978). Accordingly, we proceed to consider the merits of Shamie's arguments.

We emphasize at the outset that a mere finding of jurisdiction to entertain Shamie's claim does not determine our ultimate resolution of the substantive issues he presents. Indeed, for the reasons which follow, we hold that Shamie did not in fact suffer a denial of due process as a result of the City's conduct.

The district court found, correctly, that first-time liquor license applicants are not normally entitled even to "minimal due process" under Michigan state law. Thus, in ordinary circumstances, the City authority's failure to give reasons for denying a liquor license would be unassailable on constitutional grounds. However, the district court went on to extend the principle of *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 723 (1972) to this case; on that basis, it decided that the agreement made in district court between Shamie and the City's attorney gave Shamie a "property interest" in the outcome of his application. This "property interest," in turn, entitled him to a "minimal due process," including the right to reasons for any post-agreement denial of his application. We cannot agree with this analysis.

*Perry* involved a college professor who had been teaching in the Texas state school system for ten years. The junior college where he was employed at the time of the litigation had no *formal* tenure system. He brought suit when his contract was terminated without a hearing, allegedly because he had exercised his First Amendment rights by criticizing the school's Board of Regents. Normally, untenured employees have no "property interest" protectible by procedural due process constraints. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Tenured employees, however, do have such a property interest, and are entitled to a pre-termination hearing. *Roth, supra,* at 576, 92 S.Ct. at 2708, citing *Slochower v. Board of Higher Education of New York,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). Perry alleged that he enjoyed *de facto* tenure because of his long service and an "understanding" with the college administration, embodied in a University Board "Policy Paper." The Supreme Court held that if Perry's allegations were true, i. e., if he was in fact the equivalent of a tenured employee, he was entitled to a due process hearing.

■ In the present case, Shamie is a first-time liquor license applicant; in that capacity, we repeat, he does not enjoy procedural due process rights under Michigan state law. *See Morse v. Liquor Control Commission,* 319 Mich. 52, 66, 29 N.W.2d 316, 322 (1967) and *Bisco's v. Liquor Commission,* 395 Mich. 706, 716, 238 N.W.2d 166, 171 (1976). He had an agreement with the City's attorney that he would receive reasons for future denials of his application. By analogy to *Perry,* he attempts to use this "understanding" with the City to bootstrap himself into the more favorable constitutional position of a license holder facing revocation of his license. This analogy is superficially attractive but analytically unsound. *Perry's* "understanding" with the college authorities did not, in and of itself, endow him with procedural due process rights. Rather, that "understanding" was evidence that the lower courts had misconstrued his true status from the beginning. As the Supreme Court recognized, Perry was in fact, though not in form, a tenured professor; he was therefore entitled to treatment as such. Here, however, Shamie is in fact only a first-time license applicant:

the City's promise to tell him why his application might be rejected does not automatically confer on him a "property interest" protected by constitutional due process. The City's agreement altered Shamie's legal rights only insofar as he thereby became entitled to the benefit of his bargain. Our research has produced no authority to support a contrary conclusion. Shamie's expectations here simply do not rise to the level of the "property interests" traditionally afforded due process protection. His status is not comparable to that of welfare recipients' loss of benefits, *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); parolees threatened with revocation of parole or probation, *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); wage earners against whom an order of attachment is sought, *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); or a driver who faces revocation of driver's license, *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Neither do his interests arise from "independent sources such as state law." See *Roth, supra* 408 U.S. at 577, 92 S.Ct. at 2709; *Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975); *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); and *Leis v. Flynt*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979).

We note in passing that the City did belatedly fulfill its promise. We also note that there is ample evidence to suggest that Shamie already knew why his application had not been approved. The record shows that Shamie altered his plans to meet specification requirements a number of times. It is clear that he was aware of the existence of a procedure to follow, but chose to do so in a haphazard fashion. When we consider, first, the circumstances surrounding this case—including the essentially local character of the controversy, *see Perry, supra* 408 U.S. at 603, 92 S.Ct. at 2700—and, second, the absence of precedent for shrouding an individual in Shamie's position with constitutional protection, we are con-

strained to reverse the district court on this issue. *Cf. Paul v. Davis, supra*, 424 U.S. at 711–12, 96 S.Ct. at 1165.

Undeniably, the City should have adhered to its promise from the outset. Since that promise was embodied in a court order, the City may well have placed itself in contempt when it failed to comply. If this is indeed the case, Shamie has recourse to an adequate remedy without invoking constitutional sanctions. In any event, we decline to strain the concept of procedural due process by finding a "protected interest" where none has been deemed to exist before.

■ We now turn to Shamie's allegations that he was denied due process, equal protection, and the right to petition the government during the period between 1970 and 1975. The district judge made a thorough analysis of whether any due process protections obtained between 1970 and 1975, and we affirm that judgment for the reasons provided in his opinion.

We also find that Shamie's equal protection and right to petition claims, not addressed below, are without merit. There is no evidence in this case of the deliberate scheme of discrimination which characterizes an equal protection violation. *Glicker v. Michigan Liquor Control Commission*, 160 F.2d 96, 99 (6th Cir. 1947). Furthermore, the confusion Shamie apparently experienced in the maze of the local administrative process does not amount to an abridgment of his right of access as guaranteed by the First Amendment. On the contrary, Shamie petitioned frequently. Compare, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), striking down laws which prohibited access to courts and certain agencies, and *United Mine Workers of America v. Illinois State Bar Association*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967), voiding a rule which limited access to attorneys.

Finally, we affirm the district court's dismissal of the individual defendants.

Accordingly, for the reasons noted above, the case is remanded to the district court with directions to proceed in a manner not inconsistent with this opinion.