Kendrix M. EASLEY, Plaintiff,

v.

UNIVERSITY OF MICHIGAN BOARD OF REGENTS; Terry Sandalow, Dean of Law School; Theodore St. Antoine; Peter Westen; Beverley Pooley; Susan Eklund and Kris Munroe, Jointly and Severally, Defendants.

No. 84–CV–7560–AA.

United States District Court,
E.D. Michigan, S.D.

April 18, 1986.

Kendrix M. Easley, in pro. per.

Doris M. Harker, University of Michigan, Ann Arbor, Mich., for defendants.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Kendrix Easley ("Easley"), plaintiff, had as his central demand in this lawsuit that I should order the University of Michigan Law School ("law school") to award him a Juris Doctor ("J.D.") degree. I conducted a trial and on January 29, 1986, 627 F.Supp. 580, I issued an opinion in which I held against Easley's claim. That opinion is incorporated herein by reference and made a part hereof.[1]

I continue to regard that claim as the core of this litigation. It was because that claim went to the heart of Easley's contention that I bifurcated that issue. I do not overlook Easley's remaining legal claims. He contends that defendants denied him the J.D. degree and commenced disciplinary proceedings against him because he is a black man; that defendants charged him with cheating in retaliation for his persistent objections to a final grade of "D" in Professor Theodore St. Antoine's ("St. Antoine") employment discrimination course; and that defendants searched his briefcase while he was involved in a law school hearing and took papers from it. As to these claims defendants have moved for summary judgment. Easley has also filed a motion for a new trial "before an unbiased judge." [2]

The background for this litigation is set out in full detail in my earlier opinion and

---

**1.** The University of Michigan Law School is still amenable to plaintiff completing his degree by independent study at the University of Michigan Law School or at any other accredited law school. Affidavit of Susan Eklund, Associate Dean of the University of Michigan Law School, March 28, 1985, ¶ 12.

**2.** Easley filed the motion without the knowledge or consent of his attorney. Because of this and other incidents placing Easley and his attorney "at odds on the continued handling of [the case]," I permitted Easley's attorney, at the attorney's request, to withdraw. Easley is now proceeding, at his insistence, *in pro per.* Stipu-

need not be repeated here. What I do repeat, however, for emphasis is that Professor Wade McCree[3] of the University of Michigan Law School, a former Judge of both this Court and the United States Court of Appeals for the Sixth Circuit, presided at the law school trials on both the cheating and plagiarism charges. Those tribunals found Easley guilty of plagiarism and not guilty of cheating on the employment discrimination course. Easley now contests his plagiarism conviction.[4] The findings of fact of that tribunal presided over by Professor McCree established beyond doubt both the basis for and the fact of conviction.[5]

### I. MOTION FOR A NEW TRIAL BEFORE AN UNBIASED JUDGE

Easley's motion seeks two results: first, a new trial of his central equitable claim, and second, my disqualification. I have already considered and rejected Easley's argument for my disqualification.[6] I hereby incorporate by reference my prior ruling.

---

lation for Withdrawal of Plaintiff's Counsel, ¶¶ 2–4.

**3.** For the first time during a hearing on the petition of Easley's counsel to withdraw, Easley made the facially incredible claim that part of the race discrimination practiced against him was the selection of Professor McCree to preside at the trial.

**4.** THE COURT: As I understand it ... at the plagiarism trial that—that Professor McCrea [sic] presided over was that it was shown that this article, which you handed in to Professor Westen ... was not written by you but was written by someone else?

MR. EASLEY: No, no, that is only a fragmentary part of the charges, Your Honor. I think we have enumerated—

THE COURT: Isn't that the central plagiarism charge?

MR. EASLEY: No it is not.

. . . . .

THE COURT: And wasn't it shown, even though you might not have agreed, wasn't it shown at the trial that you were not the author of that paper?

MR. EASLEY: No, that was not an issue that was really discussed at the trial, Your Honor.

Hearing Transcript, March 11, 1986, pp. 30–31.

**5.** Professor McCree held:

---

The motion for a new trial is governed by Fed.R.Civ.P. 59(a)(2), which permits a new trial "in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted." Local Rule (E.D.Mich.) 17(m)(3) provides:

> Generally, and without restricting the discretion of the Court, motions for rehearing ... which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, will not be granted. The movant must not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

Easley has not even attempted to satisfy this standard. The motion simply recites his version of the history of this litigation.

Accordingly, Easley's motion for a new trial before an unbiased judge is denied.

### II. MOTION FOR SUMMARY JUDGMENT

Although defendants' motion seeks summary judgment, I have power to treat it as

---

> This document constitutes the findings of fact of the Court pursuant to Rule 8 of the Rules of Conduct and Disciplinary Procedures.
>
> . . . . .
>
> (2) ... Mr. Easley undertook to secure an academic credit for independent study by submitting a paper that Mr. Easley represented as his own product when in fact the paper was substantially plagiarized....
>
> . . . . .
>
> (5) The evidence was uncontradicted that Mr. Easley submitted to Professor Westen a paper entitled *A Comparative Analysis of African and American Slave Systems* that was substantially copied verbatim from several authors for the most part without the employment of quotation marks or attribution, and we find that the paper was plagiarized.

*In the Matter of Kendrix M. Easley on the Complaint of Peter Westen,* August 4, 1983 (Attachment to the Memorandum Brief in Support of Defendants' Motion to Dismiss, March 28, 1985).

**6.** Memorandum Opinion and Order, May 23, 1985.

The United States Court of Appeals for the Sixth Circuit denied Easley's Petition for a Writ of Mandamus directing me to disqualify myself. No. 85–1939 (March 10, 1986).

a motion for dismissal. The label is unimportant. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2713 (1983). *See also*, Fed.R.Civ.P. 41(b). After a thorough examination of the pleadings, documents, and other materials, and after extended colloquy with Easley in open court, I am persuaded that defendants are entitled to summary disposition.

Although Easley subjectively perceives a pervasive, ever expanding conspiracy to deprive him of his civil rights, this litigation is actually the product of a tragic psychological spiral. *Shakespeare v. Wilson*, 40 F.R.D. 500, 502 (S.D.Cal.1966), aptly describes the phenomenon:

> Having been defeated in state court proceedings and being unhappy and somewhat humiliated and frustrated by the results of such proceedings, these persons lash out at judges, attorneys, witnesses, court functionaries, newspapers, and anyone else in convenient range, terming all of them corruptly evil and charging them with perjury and conspiracy in a last desperate effort to relitigate the issues on which they have once lost hoping to secure sizeable damages to boot.

The telltale sign of this sort of case is a string of conclusory allegations of a broad and malevolent conspiracy coupled with a persistent inability on the part of plaintiff to state briefly, simply, and clearly, as required by Fed.R.Civ.P. 8(a) and 8(e)(1), the factual basis for his conclusions. Such cases are subject to dismissal. *See Shakespeare, supra* at 504; *Echols v. Voisine*, 506 F.Supp. 15, 19 (E.D.Mich.1979) (Judge Harvey), *aff'd*, 701 F.2d 176 (6th Cir.1982). *Cf. Package Machinery v. Hayssen Mfg. Co.*, 164 F.Supp. 904 (E.D.Wis.1958), *aff'd*, 266 F.2d 56 (7th Cir.1959) (dismissing complaint under Fed.R.Civ.P. 41(b) where plaintiff alleged that defendant stole trade secrets, but plaintiff refused to specify which trade secrets were stolen).

### A. *Race Discrimination*

Easley claims that he was denied a Juris Doctor degree and subjected to disciplinary proceedings because of his race. My January 29, 1986 decision establishes as a matter of law that Easley has no entitlement to a Juris Doctor degree. Even if there were racial animus here (and I find none—to the contrary, he was greatly helped by Associate Dean Susan Eklund ("Eklund") because of an affirmative action policy at the law school), I would have no power to award him a degree. He cannot be deprived of something to which he has no entitlement. Further, his conviction for plagiarism conclusively establishes the legitimacy of that charge. *See Howell v. Tanner*, 650 F.2d 610, 615 n. 6 (5th Cir.1981), *cert. denied*, 456 U.S. 918–19, 102 S.Ct. 1775–77, 72 L.Ed.2d 178, 180 (1982). Thus, the sole basis for Easley's allegation of race discrimination is the coincidence of the cheating charge of which he was acquitted and Easley's race.

Conclusory allegations are subject to dismissal. *See German v. Killeen*, 495 F.Supp. 822 (E.D.Mich.1980) (Judge Cohn) (§ 1981 complaint dismissed because plaintiff failed to allege any facts indicating that he, a black man, was treated differently than white co-workers). *Echols, supra; Shakespeare, supra.* Easley has not alleged any facts supporting an inference that he was disparately treated because of his race. At the hearing on this motion I asked him to provide any evidence he had that tended to show race discrimination. He steadfastly refused to do so, choosing to rely instead on conclusory allegations.[7]

Moreover, St. Antoine and the Committee on Professional Responsibility made the

---

7. THE COURT: Don't you, at the very least, when you bring a race discrimination charge, as you do in your argument here against Professor St. Antoine, don't you have to show some kind of disparate treatment that you were treated differently by him because you were black [than] he would treat white students.

MR. EASLEY: That is correct, Your Honor.

* * * * *

THE COURT: I am asking you to forthrightly tell me if this case came to trial on the issue of race discrimination by Professor St. Antoine against you, how could you show, what would you show that would show that necessary ingredient of race discrimination that is inherent in every case, and that is, that you were treated differently than white students,

charge because of probable cause to believe that Easley altered his examination booklet. (St. Antoine Depo., pp. 13–17). St. Antoine outlined his concerns in a memorandum to Dean Eklund. (St. Antoine Depo., p. 4).

[A]s I was preparing to return Mr. Easley's bluebooks to the file, something about the cover registered with me for the first time. The *original* cover bluebook, the one I had first graded, had contained an I.D. number with transposed middle digits, "7485" when it should have been "7845." This led the proctor, apparently, to write in "7845(?)," the missing number in the sequence. The bluebook now in my possession had the *correct* I.D. number on the name line (see attached xerox). The number is in ink, and there is no sign it has been altered. Plainly, there had been a substitution of bluebooks.

My daughter Claire, who put the bluebooks back in numerical order after I had graded them, independently confirms the transposition of the middle digits in the original I.D. number. She recalls it was way out of sequence, and only by reference to the proctor's corrected number could she place it properly. There was no other misnumbered exam. Moreover, my wife Lloyd, who reviews my arithmetic, puts a small check mark in the upper left-hand corner of the cover bluebook as she finishes each one. That too is missing from the existing set.

(St. Antoine Depo., Ex. 13). Easley submits no affidavits or other proof controverting St. Antoine's testimony[8]. Proceedings brought on the basis of probable cause cannot be the basis of a subsequent § 1983 claim. *See Howell, supra,* 650 F.2d at 614–15 (affirming summary judgment for defendants sued under § 1983 for alleged false arrest and malicious prosecution where defendants had probable cause for the arrest and prosecution).

Accordingly, defendants' Motion for Summary Judgment on plaintiff's race discrimination claim is granted. Alternatively, the race discrimination claim is dis-

---

because you are black, by Professor St. Antoine? What would you show to support that?

MR. EASLEY: The testimony and procedures of the law school.

THE COURT: I don't know what that means. You have to show that you were disparately treated. How were you treated differently as a black than the white students at the law school by Professor St. Antoine? Tell me that.

MR. EASLEY: The fact that a professor brings a bogus cheating charge lends credibility to the fact that it is race discrimination, Your Honor.

THE COURT: Do you have any evidence that you were treated differently in that connection than a white student or is it just a happenstance that you were, as you say, faced with a bogus cheating charge? What did that have to do with your race?

MR. EASLEY: The evidence is in the documents, tapes and transcripts.

. . . . .

THE COURT: What does that contain? Tell me what that is.

MR. EASLEY: When we get the evidence your Honor, we will present that at the trial.

. . . . .

THE COURT: Do you believe that those documents, if you obtain them, would show that you were disparately treated by Professor St. Antoine because of your race?

MR. EASLEY: That is correct.

THE COURT: In what way do you have that belief?

MR. EASLEY: The evidence is on the tapes, transcripts and documents, Your Honor.

THE COURT: Can you tell me how it is that you think that that evidence will help you, assuming you can find it?

MR. EASLEY: No, Your Honor, I am not prepared to argue the merits of the trial in a Motion for Summary Judgment.

THE COURT: Go to your next point then.

Transcript of Hearing, March 11, 1986, pp. 17, 19–22.

8. THE COURT: The testimony of St. Antoine in this deposition. Have you in any way stated under oath, in any paper, that you contradict any of the statements that he has made in this deposition?

MR. EASLEY: Have you filed on the Motion for Summary Judgment or are you referring to the complaint?

THE COURT: At any time, have you filed anything in opposition to this deposition?

MR. EASLEY: I think the complaint does specify—

THE COURT: You stand on the complaint?

MR. EASLEY: That is correct.

THE COURT: All right. That is what I want to know.

Hearing Transcript, March 11, 1986, pp. 32–33.

missed for failure to plead briefly, simply, and clearly, facts showing a basis for relief. Fed.R.Civ.P. 8(a), 8(e)(1), 12(b)(6), and 41(b).

### B. *First Amendment*

■ Easley claims for the first time in his trial brief that cheating charges were brought against him in retaliation for exercising his first amendment right to complain to a professor at a state university about a final grade. The complaint does not allege deprivation of a first amendment right. During the hearing on this motion, Easley was unable to find such a claim, although he steadfastly asserted that it was there; he was able only to reiterate conclusory or irrelevant allegations.[9] First amendment claims that are not supported by specific factual allegations are subject to dismissal. *See Pace v. Shepherd,* 446 F.2d 1239 (6th Cir.1971) (affirming dismissal for failure to plead specific facts supporting a first amendment claim); *Echols, supra; Shakespeare, supra. A fortiori,* a phantom claim that lacks even conclusory allegations in its support must be dismissed.[10]

Even if Easley had raised a first amendment claim, it would be vulnerable to summary judgment because he has failed to raise a genuine dispute as to the existence of probable cause to bring the cheating charge. *See Howell, supra,* 650 F.2d at 614–16. St. Antoine's testimony (*supra* at 7, 9) establishes probable cause to bring the charges. Easley presents no affidavits or other offer of proof controverting St. Antoine's testimony. He relies on the conclusory allegations of his complaint.[11]

Accordingly, defendants' Motion for Summary Judgment on this claim is granted. Alternatively, the first amendment claim (assuming there is one) is dismissed for failure to plead briefly, simply, and clearly, facts showing a basis for relief. Fed.R.Civ.P. 8(a), 8(e)(1), 12(b)(6), 41(b).

### C. *Search and Seizure*

Easley's final claim is that defendants took papers from his briefcase in violation of the fourth and fourteenth amendments.

---

9. THE COURT: Where in the complaint do you raise the first amendment claim, Mr. Easley?

MR. EASLEY: This would be in allegations from 36–55.

THE COURT: Where in 36 through 55, specifically, do you raise the issue?

MR. EASLEY: This would be raised by the fact that in Averment 42, that defendant St. Antoine actually called plaintiff Kendrix Easley a damned fool for trying to continually raise his grade and told plaintiff to leave his office.

THE COURT: How does that raise a first amendment claim, that paragraph

MR. EASLEY: You have to read it in the context of the entire complaint, Your Honor.

THE COURT: Anything else? Any other specific reference to a first amendment complaint?

MR. EASLEY: Yes. No. 48, that the defendant Eklund and St. Antoine knew the accusation of June 23, 1984 was false and no basis existed for referral to the Committee on Professional Responsibility and, therefore, attempted to fabricate and manufacture evidence of cheating.

THE COURT: How does that raise a first amendment complaint?

MR. EASLEY: On a motion—on a complaint, the courts have construed all the averments liberally with regards to constitutional rights.

THE COURT: I can't construe something that isn't there, no matter how liberally I construe your complaint; I can't go so far as to put something in that isn't said. That is why I am asking you, where do you raise the first amendment complaint?

MR. EASLEY: As I said before, the complaint specifies a first amendment violation. I would like to draw the Court's attention to two averments: No. 53 states that there was no evidence to support defendant St. Antoine's allegation of misconduct, continuing to harass and maliciously prosecute plaintiff, Kendrix M. Easley, because of his race and to deprive plaintiff of a significant interest in liberty and property; and, more specifically, Averment 85 which states succinctly, that defendants initiated the hearings in which the above described testimony was uttered with an ulterior purpose, to wit, to prevent plaintiff from making public the discriminatory and illegal activity of the University of Michigan Law School and its administrators and agents.

THE COURT: All right. Thank you.

Hearing Transcript, March 11, 1986, pp. 35–38.

10. Easley has not moved to amend the complaint.

11. *See, supra,* at n. 8.

Easley alleges that one of the defendants took personal papers from his briefcase during an April 11, 1983 conference regarding the cheating charge. (Complaint, ¶¶ 73–74). Professor Beverley Pooley ("Pooley") is the only person named who is a defendant in this lawsuit who was present at the conference. (Complaint, ¶ 72). Presumably, then, Easley is charging Pooley with the unlawful search and seizure. Yet, at a hearing on this matter, Easley resisted even this elementary deduction.[12]

■ Moreover, Easley alleges no facts regarding the particulars of the claim.[13]

12. THE COURT: Now, apparently, the only defendant that was at the pretrial conference on April 11, 1983, when, as you allege, your personal papers and documents were removed from your briefcase, was Professor Pooley, is that correct? That is all you allege.

MR. EASLEY: I didn't understand your question, Judge Feikens.

THE COURT: The only defendant who was at the pretrial conference, when your papers, as you allege were removed, was Professor Beverley Pooley, the only defendant?

MR. EASLEY: That is correct.

THE COURT: So the other defendants were not present at that time, the other defendants who you have sued.

MR. EASLEY: Well, it says other unnamed secretaries and recorders.

THE COURT: Those are not defendants.

MR. EASLEY: I am going to object to this line of questioning, Your Honor.

THE COURT: No, listen to me now and don't start that, Mr. Easley. I am asking you questions in your own interest. Is it correct that the only defendant against whom you allege the claims that I have read through is Professor Pooley?

MR. EASLEY: No, no. No, it is not.

THE COURT: How can you say it is not correct?

MR. EASLEY: If the Court will address No. 82.

THE COURT: I am talking about the search and seizure. That doesn't say anything about search and seizure in 82.

MR. EASLEY: It addresses the issue, Your Honor. You can't, in a complaint—

THE COURT: Mr. Easley, look—you say in 82 that the testimony of each defendant, as indicated, was false, untrue, malicious, willful, wanton and intentionally given or made with such utter disregard for the accuracy therein that it was known or should have been known to be as aforesaid. That doesn't say anything about the search and seizure claim.

MR. EASLEY: Well, it does, Your Honor, in the fact that the aforesaid refers back to the previous averments in the complaint and it states quite clearly that the defendants, Susan Eklund, Kris Munroe, and Peter Westen, under oath, falsely testified and deliberately concealed evidence which would have acquitted plaintiff.

THE COURT: Maybe you don't understand. I am pursuing your search and seizure claim.

You say that the defendants searched and seized personal papers and documents from your briefcase while you were at that pretrial conference.

MR. EASLEY: That is correct, Your Honor.

THE COURT: The only defendant that you place there, physically, is Pooley. What other defendants do you claim searched and seized your briefcase?

MR. EASLEY: I claim that the law school administrators did. Whether it was—

THE COURT: You have alleged that.

MR. EASLEY: I haven't alleged specifically any particular person in that complaint.

Hearing Transcript, March 11, 1986, pp. 25–27.

13. THE COURT: What proof would you show as to who it was that searched and seized papers from your briefcase?

MR. EASLEY: That would be based upon the testimony of the defendants that is contained in the tapes and the transcripts.

THE COURT: What testimony is that? Tell me what that testimony says.

MR. EASLEY: That testimony is on the tapes and transcripts, Your Honor, I am not going to attempt to—

THE COURT: What does it say?

MR. EASLEY: The testimony is on the tapes and transcripts, I will not attempt to quote that.

THE COURT: Do you have any knowledge as to what that says?

MR. EASLEY: I have a basic knowledge but the tapes and transcripts would be the best evidence concerning that.

THE COURT: Tell me now, since we don't have the tapes before us, what it is that you believe the tapes contain as to the identity of the person or persons who went through your briefcase?

MR. EASLEY: I am not going to attempt to quote what is on the tape, Your Honor, but the tapes and documents—

THE COURT: Do you have any proof?

MR. EASLEY: The school has the tapes, documents and transcripts, Your Honor.

THE COURT: But do you have any proof to what is in them?

MR. EASLEY: The school has those tapes, transcripts and documents.

THE COURT: As you stand here now, do you know of your own knowledge what is in the tapes?

MR. EASLEY: I can't quote those exactly, no, I cannot.

Significantly, although he claims that the papers taken would have exonerated him of cheating and established an entitlement to a degree, he cannot provide a particular or even general list of the papers taken.[14] Once again, Easley is trying to bootstrap himself into a cause of action with conclusory allegations and accusations. These cannot survive a motion to dismiss or for summary judgment. *See Mosher v. Saalfeld,* 589 F.2d 438 (9th Cir.1978), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979) (affirming summary judgment for defendants charged with an unlawful search and seizure where plaintiff failed to present particular allegations or evidence supporting her claim); *Package Machinery, supra* (dismissing complaint where plaintiff alleged that defendant stole trade secrets, but where plaintiff refused to state with specificity which secrets were stolen); *Pace, supra; German, supra.*

Accordingly, defendants' Motion for Summary Judgment is granted. Alternatively, the search and seizure claim is dismissed for failure to plead briefly, simply, and clearly, facts showing a basis for relief. Fed.R.Civ.P. 8(a), 8(e)(1), 12(b)(6), 41(b).

### III. CONCLUSION

"[T]his is a case that never should have been litigated." *Regents of the University of Michigan v. Ewing,* — U.S. —, —, 106 S.Ct. 507, 516, 88 L.Ed.2d 523 (Powell, J., concurring). The epitaph applies equally here. Easley has attempted to conceal his academic shortcomings in allegations of constitutional violations. In so doing, he trivializes the very rights he so vigorously asserts and blinds himself to the inescapable fact that he has not yet earned a Juris Doctor degree.

An appropriate order may be submitted.

THE COURT: Can you quote them generally?

MR. EASLEY: No, I cannot.

Hearing Transcript, March 11, 1986, pp. 27–29.

14. THE COURT: What documents do you claim were taken from your briefcase?

MR. EASLEY: Those documents can be specifically enumerated, Your Honor, but those are the documents that Sue Eklund returned on October 6.

THE COURT: What are they?

MR. EASLEY: They are documents concerning the fact that the testimony of Sue Eklund and Kris Munroe given under oath was false.

THE COURT: Can you name the documents?

MR. EASLEY: I could not give a general heading, only the fact that they come from the University of Michigan Law School.

THE COURT: What I am puzzled by is how that would have helped you—you claim that if you had those documents it would have helped you in the trial in which you were charged with plagiarism?

MR. EASLEY: That is correct.

THE COURT: In what way?

MR. EASLEY: It would have proven the false testimony of the defendants, Your Honor.

Hearing Transcript, March 11, 1986, pp. 27–29.