**Kendrix M. EASLEY,**
**Plaintiff–Appellant,**

v.

**UNIVERSITY OF MICHIGAN BOARD OF REGENTS; Terry Sandalow, individually and as Dean of Law School; et al., Defendants–Appellees.**

No. 86–1483.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 15, 1988.

Decided Aug. 11, 1988.

Kendrix M. Easley argued, Detroit, Mich., pro se.

Doris M. Harker (argued), University of Michigan, Ann Arbor, Mich., for defendants-appellees.

Before MERRITT and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.

RYAN, Circuit Judge.

Plaintiff-appellant Kendrix M. Easley appeals from several adverse rulings by United States District Court Judge John Feikens in this action brought under 42 U.S.C. §§ 1981, 1982, and 1983 against various officials of the University of Michigan Law School. Although the appellant has raised a host of assignments of error, the only issue having arguable merit is whether Judge Feikens abused his discretion in denying Easley's motion to disqualify the Judge under 28 U.S.C. §§ 144 and 455 based upon Judge Feikens' affiliations with the Law School during times material to Easley's lawsuit, 632 F.Supp. 1539.

Easley properly raised the issue of Judge Feikens' impartiality during proceedings before the district court. Easley sought Judge Feikens' recusal based upon his associations with the Law School and its faculty and "his well-publicized Negrophobia." In addition, Easley filed an "Emergency Motion" before this court alleging that Judge Feikens has additional affiliations with the University of Michigan which Easley previously failed to assert. We find some of these asserted grounds for disqualification to be patently meritless. Others require explication.

Accordingly, in order to afford Judge Feikens an opportunity to address any potentially troublesome affiliations raised by Easley below and on appeal, and, if such affiliations are established, to determine whether, as a consequence thereof, Judge Feikens' impartiality in this case might reasonably be questioned, 28 U.S.C. § 455(a) and (b)(1), we retain jurisdiction and remand the case for an evidentiary hearing. The limited purposes of the hearing will be: (1) to enlarge the record regarding the nature of Judge Feikens' associations with the Law School, its faculty, and its administrators; (2) to determine whether Judge Feikens acquired actual or constructive extra-judicial knowledge of matters material to this controversy through such associations; and (3) to determine whether any associations Judge Feikens may have had with the Law School are such that the Judge's "impartiality might reasonably be questioned."

I.

Easley, a former student at the University of Michigan Law School, brought suit against several University officials seeking equitable and legal relief. Easley, who was enrolled at the Law School from 1979 until he was suspended for plagiarism in August of 1983, claimed that Law School officials wrongfully deprived him of a J.D. degree. Easley sought damages and an injunction ordering the University to award him a J.D. degree.

The spiral of events culminating in this action began during the 1979 fall academic term during which Easley was enrolled in Professor Martin's introductory civil procedure course. Professor Martin's one semester section was worth five credit hours. The University also offered civil procedure sections worth six credit hours, but the six credit sections met for two consecutive semesters, each worth three credit hours. Easley did not take the final examination in Professor Martin's class as scheduled in December of 1979. He received permission from Associate Dean Eklund to take the

examination in January 1980, but again delayed taking the test.

In 1981, toward the end of the fall term, Easley was informed by Dean Eklund and Kris Munroe, the Law School's recorder, that his civil procedure course work was incomplete. The examination was again rescheduled and again postponed at Easley's request. Easley eventually took the examination in March of 1982 and received a passing score. He now claims that shortly thereafter, in April of 1982, Munroe notified him of his passing score, and that both Munroe and Dean Eklund told him that he had earned six credit hours.

In accordance with standard Law School procedure, Munroe did not enter Easley's grade into the Law School's computer, which generates student transcripts, until June 22, the end of the semester. Munroe's entries, however, erroneously indicated that Easley had enrolled in a six credit civil procedure section rather than Professor Martin's five credit section. While conducting a routine degree audit, Dean Eklund and Munroe discovered the error and corrected Easley's record to reflect the fact that he had earned only five civil procedure credits. On July 16, 1982, Eklund informed Easley that he had erroneously been awarded an extra credit hour and that he had actually earned only 80 credits, one credit shy of the number required for graduates entering in Easley's class. Although Dean Eklund had limited discretion to determine the number of credit hours a student could receive for an independent study course, she had no authority to alter the number of credit hours given for established courses like civil procedure.

On June 18, 1982, prior to receiving Dean Eklund's notice, Easley approached Professor St. Antoine in an effort to improve his final exam grade of "D" in Professor St. Antoine's course in employment discrimination. Professor St. Antoine reread Easley's examination and raised the grade to a "D+." Easley again asked Professor St. Antoine to raise his grade and, after a heated exchange, Professor St. Antoine asked Easley to leave his office. While returning Easley's exam to the file, Professor St. Antoine observed markings on the examination blue book cover that led him to conclude that "[p]lainly there had been a substitution of blue books." Thereafter, on July 15, 1982, St. Antoine charged Easley with cheating. On November 23, 1982, Easley was found innocent of the charges in proceedings before a Law School tribunal chaired by Professor Donald H. Regan.

Before his November hearing on the cheating charge, Easley purportedly presented a paper to Professor Westen as a pretext in order to talk with a faculty member about the cheating accusation. Professor Westen thought he recognized much of the paper's text from an uncited law review article. Professor Westen thereafter charged Easley with plagiarism. Easley was found guilty in August of 1983 after an April 22, 1983, trial before another Law School tribunal, chaired by the late Professor Wade McCree, a former judge of this court. Easley was thereafter suspended for one year from completing the work necessary to earn the one credit needed for his degree.

Easley now claims that University officials asked him to leave an April 11, 1983 hearing at the Law School on the plagiarism charge. In addition, according to Easley, these officials removed exculpatory personal papers and documents from his briefcase in his absence. The only named defendant who was present at the conference is Professor Pooley, Chairman of the Law School's Committee on Professional Responsibility. Easley, however, has not accused Professor Pooley of conducting the alleged search and has been unwilling to state which, if any, documents were taken from his briefcase.

Rather than wait out his one-year suspension, Easley filed this action on November 21, 1984, asserting the following eight claims against the University and various Law School officials:

Count I: The University of Michigan lacks jurisdiction and authority to rescind a degree.

Count II: A violation of procedural due process and rights secured by the fourth amendment.

Count III: A violation of substantive due process.

Count IV: Race discrimination.

Count V: A violation of the Elliott–Larsen Civil Rights Act, Michigan Complied Laws Annotated (MCLA) § 37.2101, *et seq.*

Count VI: Breach of contract.

Count VII: Negligence.

Count VIII: Intentional interference with contractual relations.

## II.

On March 28, 1985, defendants responded to Easley's complaint by filing a motion to dismiss. Easley in turn filed an answer and a motion to disqualify Judge Feikens under 28 U.S.C. §§ 144 and 455.[1] Easley sought Judge Feikens' recusal based upon (1) his associations with the University of Michigan Law School, and (2) "his well publicized Negrophobia [as] evidenced by numerous articles questioning the competency of Negros/Blacks." Easley claimed that the Judge was biased because he was a 1941 graduate of the Law School and because he was acquainted with several Law School professors and administrators. Easley's claim of racial bias was predicated upon statements attributed to Judge Feikens in two columns and an editorial printed in the *Detroit Free Press* in 1984.[2] Judge Feikens denied Easley's motion.

Easley subsequently amended his complaint and, on July 8, 1985, defendants renewed their motion to dismiss and filed an accompanying motion for summary judgment. The court held a hearing on defendants' motions on July 15. Easley appeared at the hearing through counsel and argued against defendants' motions without requesting an opportunity to give a written response. The court thereafter: (1) dismissed the Board of Regents in their official and individual capacities; (2) declined to exercise its discretion to hear the pendent state claims in Counts V, VI, VII, and VIII and dismissed them without prejudice; (3) dismissed Count I without prejudice because it alleged no federal jurisdictional basis; and (4) denied summary judgment and declined to dismiss Counts II, III, and IV. *Easley v. University of Michigan Bd. of Regents,* 619 F.Supp. 418 (E.D.Mich. 1985).

The remaining claims, Counts II, III, and IV, were brought under 42 U.S.C. §§ 1981, 1982, and 1983. Easley first alleged that defendants deprived him of due process by "revoking" or "withholding" his J.D. degree without basis. Under this claim, Easley sought equitable relief ordering defendants to award him a J.D. degree. Second, Easley alleged that University officials violated his fourth and fourteenth amendment rights by allegedly seizing papers from his briefcase during the April 1983 conference on the plagiarism charge. Third, Easley, who is black, alleged that defendants deprived him of a J.D. degree, seized his

---

1. Section 144 provides:

   Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

   The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidvait in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

   28 U.S.C. § 144.

   Section 455 provides in part:

   (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

   (b) He shall also disqualify himself in the following circumstances:

   (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . .

   28 U.S.C. § 455.

2. *See also In Re City of Detroit,* 828 F.2d 1160 (6th Cir.1987) (Judge Feikens' refusal to disqualify himself based upon identical allegations of racial bias affirmed on appeal).

personal papers, and commenced disciplinary proceedings against him because of his race in violation of the equal protection clause and 42 U.S.C. §§ 1981 and 1982. Easley subsequently claimed that the disciplinary proceedings were also brought in retaliation for his exercise of his right to free speech. Easley sought legal relief in the form of damages on the second and third causes of action.

After this court denied Easley's subsequent petition for a writ of mandamus directing Judge Feikens to disqualify himself, the district court held a bifurcated bench trial on Easley's equitable claim. The court found it unnecessary to determine whether Easley's equitable claim was grounded in procedural or substantive due process because based upon its view of the facts, the court concluded, as a matter of law, that since Easley had never completed his degree requirements, he, therefore, never obtained a property interest in a J.D. degree.[3] *Easley v. University of Michigan Bd. of Regents*, 627 F.Supp. 580 (E.D. Mich.1986). Accordingly, the court denied Easley's claim for injunctive relief and entered a judgment of no cause of action.

Easley renewed his motion to disqualify Judge Feikens and also moved for a new trial before an unbiased judge. The motion was predicated upon the same allegations of bias underlying Easley's earlier unsuccessful motion to disqualify and was apparently filed without the knowledge or consent of Easley's attorney, causing the latter to withdraw. Defendants moved for summary judgment on Easley's remaining legal claims.

Judge Feikens subsequently denied Easley's motions to disqualify and for a new trial. *Easley v. University of Michigan Bd. of Regents*, 632 F.Supp. 1539 (E.D. Mich.1986). Further, after examining the pleadings and documents, and after an ex-

tended colloquy with Easley, who was proceeding *pro se* at this point, Judge Feikens granted defendants' motion for summary judgment on Easley's equal protection and first amendment claims and dismissed Easley's search and seizure claim for failure to plead brief, simple, and clear facts showing a basis for relief. *Id.* This appeal followed.

### III.

Assuming that Judge Feikens should not have disqualified himself, we find no error in the court's disposition of Easley's equitable and legal claims. However, given the strong interest in promoting public confidence in the integrity of the judicial process, we must look more closely at the affiliations alleged by Easley to determine if Judge Feikens abused his discretion in denying Easley's two motions for disqualification under 28 U.S.C. §§ 144 and 455.

The goal of sections 144 and 455 is to promote public confidence in the judicial system by avoiding even the appearance of partiality. *See Liljeberg v. Health Services Acquisition Corp.*, —— U.S. ——, ——, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855 (1988), *aff'g*, 796 F.2d 796 (5th Cir.1986). Sections 144 and 455 "must be construed *in pari materia....* [D]isqualification under § 455(a) must be predicated as previously under § 144, upon extrajudicial conduct rather than on judicial conduct." *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir.1983) (quoting *City of Cleveland v. Krupansky*, 619 F.2d 576, 578 (6th Cir.), *cert. denied*, 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980)). Further, "[a]lthough § 144 on its face appears to require automatic disqualification once the affidavit is filed [*see* note 1, *supra*], a district court judge has a duty to examine the affidavit to determine whether it is timely and legally sufficient." *In Re City of Detroit*, 828

---

**3.** "Whether the facts establish a property interest is a question of law." *Tarabishi v. McAlester Regional Hosp.*, 827 F.2d 648, 652 (10th Cir. 1987). "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests a person has already acquired in specific benefits. These interests— property interests—may take many forms."

*Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). Similarly, "the substantive due process analysis is not triggered unless there is a property or liberty interest taken by state action." *Levitt v. University of Texas at El Paso*, 759 F.2d 1224, 1231 (5th Cir.), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985).

F.2d 1160, 1164 n. 2 (6th Cir.1987) (citing *Berger v. United States,* 255 U.S. 22, 32, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921)). *Accord United States v. Azhocar,* 581 F.2d 735, 738 (9th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979).

"The difference between §§ 144 and 455 is that section 455 is self-executing, requiring the judge to disqualify himself for personal bias even in the absence of a party complaint." *United States v. Story,* 716 F.2d at 1091. "Recusal is mandated ... only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id.* (quoting *Trotter v. International Longshoremen's and Warehousemen's Union,* 704 F.2d 1141, 1144 (9th Cir.1983)). *Accord In Re City of Detroit,* 828 F.2d at 1167.

■ With respect to Judge Feikens' affiliations with the Law School, a reasonable person possessed solely of the facts that the Judge graduated from the School would not question his impartiality. "[A] judge's having attended or graduated from a school, which is a party, without more, is not a reasonable basis for questioning his impartiality." *Brody v. President and Fellows of Harvard College,* 664 F.2d 10, 11 (1st Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982). "All judges come to the bench with a background of experiences, associations, and viewpoints. This background alone is seldom sufficient in itself to provide a reasonable basis for appeal." *Id.* On the other hand, while Judge Feikens' personal and professional associations with the Law School's faculty and administrators may appear equally indicative of the type of inevitable tangential personal relationships which by themselves fail to suggest judicial bias, they may also have unwittingly exposed the Judge, either actually or constructively, to out-of-court information relating to Easley's claims. While "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is[,]" *In Re Union Leader Corp.,* 292 F.2d 381, 391 (1st Cir.), *cert. denied,* 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961), we are of the opinion that a ruling on the propriety of Judge Feikens' refusals to disqualify himself based upon his affiliations with the Law School and its faculty would be premature at this point in the proceeding because of the limited evidence on record concerning the nature of those affiliations. Accordingly, we order that these matters be further developed through a limited evidentiary hearing to be held on remand, the limits and purposes of which are discussed in Section IV, *infra.*

With respect to Easley's allegations that Judge Feikens is racially biased, we need only state that "[a] bias sufficient to justify recusal must be a personal bias' as distinguished from a judicial one' arising 'out of the judge's background and association' and not from the 'judge's view of the law.'" *United States v. Story,* 716 F.2d at 1090 (quoting *Oliver v. Michigan State Bd. of Educ.,* 508 F.2d 178, 180 (6th Cir.1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975)). This court has previously determined that the same statements by Judge Feikens which Easley now cites arose from Judge Feikens' judicial experience and "clearly do not evince racial animus or hatred...." *In Re City of Detroit,* 828 F.2d at 1168.[4]

## IV.

A related issue was raised by Easley in an "Emergency Motion" filed with this court four days prior to oral argument.

---

4. Indeed, in response to similarly based complaints filed with the Judicial Council of the Sixth Circuit, a committee of the Judicial Council observed that:

[t]hough Judge Feikens made an untrue and regrettable statement in the course of the interview, the full transcript demonstrates that he had no intention of denigrating black people generally. The treatment by the newspaper of a single sentence from a lengthy interview led to the perception honestly expressed in the complaints. However, the Committee is convinced that this treatment is inconsistent with the general tenor of the interview and with the well known and documented concern of Judge Feikens for racial justice.

*In Re City of Detroit,* 828 F.2d at 1163 n. 1.

Easley sought either to supplement the record with what he claimed to be further evidence of Judge Feikens' alleged bias, or to have the case remanded for a supplemental evidentiary hearing into the matters raised by his motion. In addition to realleging that Judge Feikens graduated from the Law School and is acquainted with several of its faculty and administrators, Easley alleged the following associations between Judge Feikens and the University of Michigan Law School:

(1) That Jon Feikens, Judge Feikens' son, graduated from the Law School in 1966;

(2) That Jon Feikens and Robert Feikens, also a son of Judge Feikens, are members of Judge Feikens' former law firm, whose client list includes the University of Michigan Hospital;

(3) That Judge Feikens is an active member of the Law School's Committee of Visitors;

(4) That Judge Feikens is an active member of the University of Michigan Club; and

(5) That Judge Feikens served on the Board of Governors of the University of Michigan Fund.

It is clear that Easley's motion is untimely under § 144. Section 144 specifically provides that allegations of bias must be presented in affidavit form and not less than ten days before the beginning of the term at which the proceeding is to be held. *See* note 1, *supra.* Easley has not only failed to present his newly discovered allegations in a timely manner, but he has also failed to present them in affidavit form. Further, Easley presumably filed an affidavit to accompany his initial motion under § 144 in 1985. Section 144 allows a party "only one such affidavit in any case."

■ Nonetheless, the procedural shortcomings of Easley's motion do not bar our consideration of its merits under the separate disqualification provisions of § 455.

Section 455(a) is a self-executing provision for the disqualification of federal judges. There is no particular procedure that a party must follow to obtain judicial disqualification under § 455(a). Instead, this section sets forth a mandatory guideline that federal judges must observe *sua sponte.*

*Roberts v. Bailar,* 625 F.2d 125, 128 (6th Cir.1980) (footnotes omitted). Further, the fact that Judge Feikens' rulings in the case might be legally correct does not render Easley's motion moot.

The purpose of the disqualification statute is to avoid even the appearance of impropriety; the appearance of impropriety is not lessened by the fact that the litigation would have come out the same anyway.

*Health Serv. Acquisition Corp. v. Liljeberg,* 796 F.2d 796, 801 (5th Cir.1986), *aff'd,* — U.S. ——, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). *Accord* 13A *C. Wright & A. Miller, Federal Practice and Procedure: Civil,* § 3553 at 657 (1984).

■ The affiliations of Judge Feikens' adult sons with the Law School and his former law firm are patently insufficient to call into question Judge Feikens' own impartiality under § 455.[5] Of the three remaining associations alleged by Easley, the Law School's Committee of Visitors, the University of Michigan Club, and the University of Michigan Fund, we find Judge Feikens' participation in the Committee of Visitors to be the most potentially troublesome.[6]

---

**5.** Under § 455(b)(2), a federal judge must disqualify himself "[w]here in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such an association as a lawyer concerning the matter...." Easley has failed to allege any prior connection between Judge Feikens, his sons, or his former firm and this case. Further, the fact that the firm numbers the University of Michigan Hospital among his clients is insufficient to give Jon and Robert Feikens "an interest that could be substantially affected by the outcome of [this] proceeding...." 28 U.S.C. § 455(b)(5)(iii).

**6.** The basis for Easley's belief that Judge Feikens is a member of the University of Michigan Fund is a 1953 *Detroit Free Press* article. The University alleges that Judge Feikens' participation on the Fund ceased in 1970 upon his appointment to the federal bench. Further, it is unclear from Easley's motion whether the University of Michigan Club is anything more than a typical alumni organization.

The Law School describes the Committee as:

> [A] representative group of alumni [which] meets annually at the Law School to study and evaluate the Law School's operations. The group meets with faculty, administrators and students usually in the fall of the year over a period of three days. During that time the Visitors attend law school classes, visit with faculty, and meet to hear reports on and to discuss the general affairs of the school. The Committee may make suggestions for change or improvement in the operation of the school, but they have no binding effect.

According to the Law School, Judge Feikens actively served on the Committee from July 1981 through June 1985. During this time, school officials charged Easley with cheating and plagiarism, separately conducted extensive hearings on each charge, and ultimately suspended him for plagiarism. If information concerning the charges against Easley, not otherwise made public, was provided to the Committee of Visitors by the Law School during Judge Feikens' tenure on the Committee, then Judge Feikens' impartiality in this case might reasonably be questioned. *See* 28 U.S.C. § 455(a) and (b)(1), at note 1, *supra.*

We do not mean to suggest that Judge Feikens somehow lacked candor in the proceedings below simply because his membership on the Committee has been raised initially on appeal. Indeed, the information about Judge Feilkens' membership on the Board of Visitors and his son's association with his former law firm were obtained by Easley from a biographical resume previously provided by Judge Feikens to the clerk of the district court for distribution to interested members of the public. Rather, we stress that:

> The goal of § 455 is to avoid *even the appearance* of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the

facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. The judge's forgetfulness, however, is not the sort of objectively ascertainable fact that can avoid the appearance of partiality. *Hall v. Small Business Administration*, 695 F.2d 175, 179 (5th Cir.1983). Under section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge.

*Liljeberg*, —— U.S. at ——, 108 S.Ct. at 2202 (quoting *Health Service Acquisition Corp. v. Liljeberg, 796 F.2d at 802*) (*emphasis added*).

■ We therefore grant Easley's emergency motion for a remand and direct that on remand, the district court shall conduct an evidentiary hearing for the limited purposes of: (1) enlarging the record regarding the nature of Judge Feikens' associations and affiliations with the Law School, its faculty, and its administrators; (2) determining whether Judge Feikens acquired extra-judicial knowledge of matters material to this controversy through these associations, particularly the Law School's Committee of Visitors; and (3) determining, notwithstanding the court's findings regarding (2) above, whether, because of such associations, Judge Feikens' impartiality in this matter might "reasonably be questioned."

Accordingly, Easley's emergency motion for remand is GRANTED. We RETAIN JURISDICTION and REMAND the case for proceedings consistent with this opinion.